ROWLAND MARCUS ANDRADE
9414 Plaza Point Drive
Missouri City, Texas 77459   USA

In Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>ONE PARCEL OF REAL PROPERTY LOCATED AT 9414 PLAZA POINT DRIVE, MISSOURI CITY, TEXAS 77459,<br><br>          Defendant.<br><br>ROWLAND MARCUS ANDRADE,<br><br>          Claimant.<br><br>SOLMAZ ANDRADE,<br><br>          Claimant.<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB as trustee for IRP FUND II TRUST 2A,<br><br>          Claimant. | Case No. 3:20-cv-2013-VC<br><br>**NOTICE OF MOTION AND MOTION OF ROWLAND MARCUS ANDRADE FOR A PROTECTIVE ORDER TO PRESERVE EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with Declaration of Rowland Marcus Andrade; [Proposed] Order*<br><br>Judge:  Hon. Vince Chhabria<br>Trial Date:  None Set<br>Hearing Date: July 16, 2020, 10:00 a.m. |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

1    **PLEASE TAKE NOTICE THAT** on July 16, 2020, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Vince Chhabria, located in the United States Courthouse, Northern District of California, San Francisco, Rowland Marcus Andrade ("Claimant") will and hereby does move this Court for an order requiring the Plaintiff United States to preserve and produce all evidence of any kind obtained through the governments' investigation(s) into Claimant, Jack Abramoff, Japheth Dillman, IRS Agent Bryan Wong, FBI Agent Ethan Quinn, FBI Agent Rohan Wynar, and related parties, including but not limited to any search or seizure of Claimant Andrade's businesses, computers, home, or other property or that of Jack Abrabmoff, and/or Japheth Dillman and any alleged associates of Andrade or Abramoff as it relates to the Complaint and to all of the criminal offenses allegedly committed by Andrade and his associates.

This Motion is made upon the following grounds:

1. The All Writs Act, 28 U.S.C. § 1651, allows "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This Court and other courts within the Ninth Circuit have held that the All Writs Act allows the Court to enter an order for the preservation of evidence upon request by a party. *Stanley v. Ayers*, No. 07-cv-4727-EMC, 2018 WL 4488298, at *2 (N.D. Cal. Sept. 17, 2018).

2. As set forth in the Declaration of Rowland Marcus Andrade filed herewith, the United States pursuant to a search and seizure warrant in 2018 seized a computer from Andrade's business containing audio recordings of call logs related to Andrade's business dealings at issue in this civil forfeiture case. The government returned that computer in May 2020 with significant external damage.

3. As set forth in the attached Affidavit of Terry Landry, a computer forensics expert hired to examine the computer Andrade returned by the government, there were no audio files on the computer, indicating that the government removed all of Andrade's audio files from the computer before returning it. This is astounding because the government when seizing computers is obligated to copy the contents and return the computer to its owner in the state it was originally

found without deleting files. Indeed, Federal agents told Claimant's contractors working in his office not tell Claimant about the raid or that they were there.

4. The audio files on the computer contained significant material exculpatory evidence, as they included recordings of calls with purchasers of AML Bitcoins demonstrating the legitimate and non-fraudulent nature of Andrade's cryptocurrency business.

5. The evidence in the governments possession included exculpatory recordings of calls between Andrade on the one hand and convicted felon Jack Abramoff or his associates on the other. These calls would support other written evidence showing that Abramoff attempted to extort Andrade into selling his technology and intellectual property to Abramoff by threatening to cause his associates to file lawsuits and bring baseless criminal and civil charges against Andrade, including the present case.

6. Because the government has already shown a disregard for Andrade's due process and property rights throughout this civil forfeiture lawsuit, and the government has demonstrably removed exculpatory evidence from Andrade's possession through search and seizure warrants, an order requiring the government to preserve and produce all evidence in its possession is necessary to preserve the integrity of the evidence in question and to prevent irreparable harm to Andrade.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Rowland Marcus Andrade and Terry Landry filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated: June 10, 2020

Respectfully submitted,

By: _____
Rowland Marcus Andrade
In Pro Se and Claimant

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On September 13, 2018, the government seized a computer and other electronics from my business located in Las Vegas, Nevada, the NAC Foundation, LLC ("NAC"), containing audio recordings of all calls made to or from NAC's offices. Those audio recordings included calls with customers demonstrating that myself and my third-party contracted staff made every effort to ensure customers knew exactly what they were purchasing when they purchased NAC's then-available cryptocurrency, AML Bitcoin Tokens. Those audio recordings in the governments possession also included calls with convicted felon Jack Abramoff, who attempted to extort me into selling my technology and intellectual property to him by threatening to have his associates and cronies in government bring expensive, embarrassing, and frivolous civil and criminal prosecutions against me—including this case, a frivolous claim for wire fraud created by Abramoff's associate Japheth Dillman, referred to in the Complaint as "JD."

When the government returned my computer in May 2020, the computer was smashed and there were no audio files on it. I have no idea whether the government has a copy of those audio files, or simply destroyed them. In either case, as the government has already demonstrated a willingness to tamper with or destroy exculpatory evidence, the Court should enter an order requiring the government to preserve all evidence related to any civil or criminal investigation of me in its possession and produce it to the Court for safekeeping.

## STATEMENT OF ISSUES

Whether the Court, in view of the government's already demonstrated failure to preserve material exculpatory evidence, should enter an order requiring the government to preserve all evidence related to any investigation of me and to produce that evidence to the Court for safekeeping in advance of discovery.

## STATEMENT OF FACTS

**A.    The Government's Destruction of Electronic Evidence**

1    On May 7, I received a shipment from the government containing a computer that had
2 been seized from NAC's offices located in Las Vegas, Nevada by the U.S. Department of Justice
3 on September 13, 2018 (the "Computer"). Declaration of Rowland Marcus Andrade in Support of
4 His Motion to Preserve Evidence ("Andrade Decl") at ¶ 2. When I opened the shipping package, it
5 was evident that the Computer had been severely damaged. Andrade Decl., Ex. A. Upon
6 examination of the shipping container, there was no broken glass or fragments of the Computer
7 which suggests the Computer was damaged prior to shipment by the government. Andrade Decl.
8 at ¶ 3. On the same day of receipt, I filed a police report for Investigative Mischief with the
9 Houston Police Department pursuant to Case No. 0602316-20. Andrade Decl., Ex. B.

10   Before the government seized the Computer, it contained evidence material to the present
11 case. For compliance reasons, all the incoming and outgoing calls made to my office from various
12 individuals prior to the seizure in 2018, including those who would be material fact witnesses in
13 this case, were recorded and those recordings were stored on the Computer, according to
14 statements made by Claimant's contractors working in the office. Andrade Decl. at ¶ 5. These call
15 records are vital in they prove false many of the Plaintiff's allegations in the Complaint. The
16 recordings are exculpatory evidence including calls with various purchases of Claimant's digital
17 currency, consultant calls, calls with Jack Abramoff, and politicians involved with the AML
18 Bitcoin project. Andrade Decl. at ¶ 5.

19   Before the government seized the Computer in 2018, I hired a 3rd party service provider in
20 Las Vegas, Nevada, The Office Squad ("Office Squad"), to process the audio recordings from the
21 telephone system to the Computer. Andrade Decl. at ¶ 6. Representatives from the Office Squad
22 told me they completed the audio recordings and they stored them on the Computer. One of Office
23 Squad's former employees stands by this. Andrade Decl. at ¶ 6. The Computer was the only
24 computer I owned or operated in NAC's Las Vegas office in 2018. Andrade Decl. at ¶ 6. From
25 2018 to present, FBI agents have been in contact with representatives from the Office Squad.
26 Andrade Decl. at ¶ 7. According to representatives from the Office Squad, FBI agents informed
27 them not to communicate with me or inform me of their involvement. Andrade Decl. at ¶ 7. As a
28 result of the FBI's scare tactics, I have been unsuccessful in obtaining a written statement or the

return of any e-mail communications at all from the Office Squad pertaining to the recordings. Andrade Decl. at ¶ 7.

Upon receiving the damaged Computer, I immediately sent it to Pathway Forensics ("Pathway"), a digital forensics company owned by a retired FBI agent, for inspection. Andrade Decl. at ¶ 8. As set forth in the attached Affidavit of Terry Landry ("Landry Affidavit"), none of the recordings of any of the office's incoming and outgoing calls are on the Computer. Andrade Decl., Ex. C at ¶¶ 8-9. Presumably, the government remains in possession of copies of these audio recordings. The government and the FBI have also conspired to keep this evidence from Claimant through its communications to representatives of the Office Squad. Andrade Decl. at ¶ 7.

In addition to the destruction of exculpatory evidence on my computer, the government has mishandled other evidence as well. In the Complaint, the government alleged that my Wells Fargo account ending in (9668) was used to conceal money. Dkt. No. 1 at ¶ 13. However, in their seizure of documents from my office in March 12, 2020, the FBI left many financials, copies of issued checks, payments to all the service providers and other AML Bitcoin related expenses from the same bank account. Andrade Decl. at ¶ 11. For example, the government left behind pay stubs and expense receipts for my business, copies of which are attached to my supporting declaration as Exhibit D. Additionally, the government omits from its Complaint the fact that I used the account in question to make numerous business expenditures, including paying payroll, server costs, rent, etc. Andrade Decl. at ¶ 11. These documents, which consist of exculpatory evidence, were not taken and left behind and not mentioned by Plaintiff in the Complaint because they demonstrate that I have a legitimate business with legitimate expenditures, and so did not defraud "VICTIM ONE" or any other customer.

**B.    The Connection Between Jack Abramoff's Extortion Attempt and the Present Case**

The evidence absent from the Computer includes audio recordings showing that the present case is part of an extortion scheme by convicted felon Jack Abramoff against me—and that extortion scheme itself demonstrates that the allegations of the Complaint are false.

Far from being the scam the government alleges in the Complaint (*see* Dkt. No. 1 at ¶ 16), my technology underlying AML Bitcoin was valued at over $100 million. In 2017, famous

1  convicted felon and lobbyist Jack Abramoff and several of his associates, including J.D. came to
2  me offering their help to develop AML Bitcoin partnerships with government officials. Andrade
3  Decl. at ¶ 13. I hired several of his associates including Japheth Dillman, whom I hired as a "Chief
4  Strategy Officer" to assist in developing those business relationships. Andrade Decl. at ¶ 13. But
5  later, Jack Abramoff attempted to extort me to sell my business interests and intellectual property
6  for $100 million, and as part of that sale to pay Abramoff himself a $40 million finder's fee.
7  Andrade Decl. at ¶ 14.

8  On August 20, 2019, Jack Abramoff's associate David Cohen sent me a long email urging
9  me to accept Abramoff's buyout deal. Andrade Decl., Ex. E. The letter stated: "If you let this life
10 preserver float away, for whatever reason, you can imagine on your own the possible bad
11 outcomes several of which I have listed at the bottom of this email in blue. I am in no way
12 threatening you; I am trying to present you with possible outcomes so you can make a rational and
13 unemotional decision." *Id.* at 2. The bad outcomes listed in the email include the federal
14 government seizing my patents, other companies, and assets under asset forfeiture laws—exactly
15 what the government is attempting to do in this case. *Id.* at 3.

16 On August 28, 2019, Cohen sent another long email, with the subject line "Jack is on a
17 plane but I wanted to send you this," attempting to increase the pressure of their extortionate
18 threats. Andrade Decl., Ex. F. In that email, Cohen wrote: "And what happens if the IRS or the
19 DoJ decide to pursue asset forfeiture even before you are convicted of or plead to anything
20 (without the money required to mount a defense against the federal government)? They do that all
21 the time, as you might know. If they do so here, the project is dead. No one will get anywhere near
22 this project." *Id.* I do not believe it is a coincidence that the government subsequently filed a
23 complaint for civil forfeiture here without bringing any criminal charges.

24 Abramoff is also intimately connected to the other individuals identified in the
25 government's complaint: "JD," an individual named Japheth Dillman, and "VICTIM ONE," an
26 individual named Benjamin Boyer. The purchases of AML Bitcoin Tokens that the government
27 erroneously calls "investments" in the Complaint (Dkt. No. 1 at ¶ 10) were made by a company
28 named Block Bits Capital, LLC ("Block Bits"), apparently using Boyer's money. Andrade Decl. at

¶ 19. In September 2017 and again in April of 2018, J.D. attempted to get me to join Block Bits, and shared with me a list of the owners. Andrade Decl., Ex. G. Included in that list of owners is Landfair Capital Consulting, Inc. ("Landfair"), a company founded by Abramoff's relatives that has been used as a shell to hide Abramoff's business interests. *See* Dkt. No. 18 at 35 (Ex. C). This is the same pattern of behavior Abramoff pled guilty to in 2006: obtain a client for his lobbying activities, direct the client to hire his cronies, and then get kickbacks from those cronies behind the scenes. Department of Justice Press Release, *Former Lobbyist Jack Abramoff Pleads Guilty to Charges Involving Corruption, Fraud Conspiracy, and Tax Evasion* (Jan. 3, 2006), https://www.justice.gov/archive/opa/pr/2006/January/06_crm_002.html.

Abramoff's reach appears to also extend to the IRS Agent who verified the Complaint for the government, Bryan Wong. Jack Abramoff introduced a potential customer to me by the name of "Bryant Lee," who asked several unusual questions about the nature of AML Bitcoin. Andrade Decl. at ¶ 22. On information and belief, I later learned that "Bryant Lee" was an alias used by Wong to investigate my business. Andrade Decl. at ¶ 22. Because Abramoff is well known to have connections throughout the federal government, Abramoff introduced "Lee" to me. There is a high probability that Bryant Lee is agent Bryan Wong. This is further reason to believe that this civil forfeiture action is not a bona fide criminal investigation, but the carrying out of Abramoff's extortionate threats.

C.     **The Plaintiff's Refusal to Confirm Preservation of Evidence Prior to My Filing This Motion.**

On May 18, 2020, having discovered the government's destruction of electronic evidence on my computer, I sent a letter to the government's counsel, AUSA Chris Kaltsas, requesting that the government preserve evidence. See Dkt. No. 22 at ¶ 6, Ex. A. On May 20, 2020 Kaltsas responded to my letter, stating that he did not have access to the evidence that supports the complaint because it was at his office and he was still working from home because of the Covid-19 pandemic. See Dkt. No. 22 at ¶ 7, Ex. B. He also stated that the government refused to advance the discovery schedule or to produce any evidence supporting the government's complaint outside of discovery. *Id.*

1    Because the government refused to produce evidence supporting the Complaint, I filed a
2 motion to shorten time and proceed with discovery on May 26, 2020. Dkt. No. 22. The
3 government filed its opposition to that motion on May 27, 2020. Dkt. No. 24. In that opposition,
4 Kaltsas took a different position than his earlier letter claiming that the evidence was at the U.S.
5 Attorney's office. Instead, Kaltsas stated that the government needs to obtain the evidence from
6 the IRS and FBI, suggesting that the U.S. Attorney's office never even had the evidence in their
7 possession in the first place, prior to filing the Complaint. See Dkt. No. 24 at 2.
8    In response to the government's already demonstrated destruction of evidence and AUSA
9 Kaltsas's inconsistent representations regarding the location of evidence relevant to this case, I
10 proceeded to file the present motion.

## ARGUMENT

The Court should enter an order requiring the United States to preserve evidence related to its criminal and civil investigation of me and my business because there is a significant danger, already demonstrated, that the government will destroy or conceal exculpatory evidence and cause irreparable harm to my ability to defend myself from this and other charges.

The All Writs Act, 28 U.S.C. § 1651, allows the Court to enter all writs appropriate in aid of their respective jurisdictions, including orders to preserve evidence. *Stanley*, 2008 WL 4488298, at *1. This Court and others in the Ninth Circuit have adopted a balancing test to determine whether a request for an order to preserve evidence should be granted, applying the following three factors:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved.

*Stanley*, 2018 WL 4488298, at *2 (quoting *Echostar Satellite LLC v. Freetech, Inc.*, No. C 07-06124 JW, 2009 WL 8399038, at *2 (N.D. Cal. Jan. 22, 2009)). Preservation orders may be imposed on government entities including prosecutors and the federal government. In *Stanley*, this Court entered an order requiring the Alameda County District Attorney's Office to preserve

1  evidence reflecting the prosecutor's reasons for striking jurors in the plaintiff's criminal case. 2018
2  WL 4488298, at *2. This Court has also entered orders requiring the United States to preserve
3  evidence relating to recording of telecommunications by the National Security Agency. *In re*
4  *National Security Agency Telecommunications Records Litig.*, MDL No. 06-1791-VRW, 2007
5  WL 3306579 (N.D. Cal. Nov. 6, 2007).
6       As explained in the Statement of Facts above, all three factors weigh heavily in favor of an
7  order preserving evidence here. The already demonstrated tampering with the Computer, together
8  with the connections in evidence between Abramoff's extortionate threats to cause civil forfeiture
9  proceedings against me if I did not sell my business and between Abramoff and IRS Agent Bryan
10 Wong, show that the Court should have a grave concern for the continuing existence and
11 maintenance of the integrity of evidence in the government's possession. The government's
12 inconsistent statements regarding the location of evidence should cause concern about the integrity
13 of the government's current evidence preservation. C*ompare* Dkt. No. 22, Ex. B ("I am currently
14 not working in my office, where the discovery materials you seek lie") to Dkt. No. 24 ("The
15 Government attorney assigned to this matter cannot easily access all discovery relevant to this
16 matter until the United States Attorney's Office, the local office of the Federal Bureau of
17 Investigation, and the local office of the Internal Revenue Service – Criminal Investigation
18 Division open."). If the United States Attorney's Office did not have copies of the evidence to
19 support the Complaint, who really filed the Complaint? The government's *ex parte* submission of
20 evidence under seal, about which the Court has already demonstrated skepticism (Dkt. No. 30),
21 further demonstrates the government's lack of regard for my due process rights and a need for the
22 Court to take charge of evidence preservation.
23      The destruction of evidence in question—the audio recordings stored on the Computer at a
24 minimum—would cause me irreparable harm. Because the government deleted the audio
25 recordings from the Computer, the only copies of those recordings are in the government's
26 possession. Those recordings demonstrate both that I took great care to ensure compliance with
27 the law in all my business dealings, and that Abramoff and his associates took part in a scheme to
28 extort me into selling my business under threat of frivolous civil and criminal litigation, including

civil forfeiture actions. Andrade Decl. at ¶¶ 5, 12-22. And the United States plainly has the capability to preserve evidence, though in view of the probability that Abramoff's extortion scheme reaches into the government agencies at issue, additional action by the Court may be required to ensure the integrity of the evidence in question. That is why I am requesting that the Court not merely enter an order to preserve evidence, but that the Court order the government to produce all evidence relating to the allegations at issue in this case to the Court for safekeeping.

## CONCLUSION

The government has already destroyed or withheld exculpatory evidence from me. As improbable as it may seem, the evidence attached to this motion indicates that this civil forfeiture action is part of an extortion scheme by famous convicted felon and lobbyist Jack Abramoff to force me to sell my business under threat of criminal action, and that Abramoff has connections in the IRS and FBI that put exculpatory evidence in danger of destruction.

I therefore respectfully request that this Court enter an order directing the United States, and specifically the U.S. Department of Justice, the FBI, the SEC, the U.S. Treasury, and their employees and agents to preserve all physical, documentary, or other evidence in their possession, custody, or control relating to the allegations at issue in this case, including all email communications sent or received by the Plaintiff and/or any U.S. government agency and their associates whether those communications are stored in government email accounts, in personal email accounts, or in some other location; and for the United States to produce all such evidence in its possession to the Court for safekeeping in advance of formal discovery.

Dated: June 10, 2020

Respectfully submitted,

By: _____
Rowland Marcus Andrade
In Pro Se and Claimant