ROWLAND MARCUS ANDRADE
9414 Plaza Point Drive
Missouri City, Texas 77459  USA

In Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ONE PARCEL OF REAL PROPERTY LOCATED AT 9414 PLAZA POINT DRIVE, MISSOURI CITY, TEXAS 77459,<br><br>    Defendant.<br><br>ROWLAND MARCUS ANDRADE,<br><br>    Claimant.<br><br>SOLMAZ ANDRADE,<br><br>    Claimant.<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB as trustee for IRP FUND II TRUST 2A,<br><br>    Claimant. | Case No. 3:20-cv-2013-VC<br><br>**DECLARATION OF ROWLAND MARCUS ANDRADE IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER TO PRESERVE EVIDENCE**<br><br>*Filed concurrently with Notice of Motion and Motion for Entry of An Order to Preserve Evidence and [Proposed] Order*<br><br>Judge:  Hon. Vince Chhabria<br>Trial Date:  None Set |

**DECLARATION OF ROWLAND MARCUS ANDRADE**

I, Rowland Marcus Andrade, declare as follows:

1. I am a party in the above-entitled action. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. On September 13, 2018, the government searched the offices of my business, NAC Foundation, LLC ("NAC"), in Las Vegas, Nevada, and seized, among other things, a computer (the "Computer").

3. The government returned the Computer to me on May 7, 2020. When I opened the shipping package, the computer had been severely damaged. There was no broken glass or other fragments in the package, indicating that the damage was done prior to shipment. True and correct copies of pictures I took of the damaged Computer as I received it on May 7, 2020, are attached hereto as Exhibit A.

4. On the same day I received the Computer, because it had been returned in damaged condition, I filed a police report for Investigative Mischief with the Houston Police Department pursuant to Case No. 0602316-20. A true and correct copy of that police report is attached hereto as Exhibit B.

5. Before the government seized the Computer in September 2018, it contained audio recordings of all incoming and outgoing calls made to or from my office prior to the seizure. Those audio recordings included telephone calls with individuals who are material fact witnesses in this case, including but not limited to Japheth Dillman (identified in the Complaint as "JD"), Benjamin Boyer (identified in the Complaint as "VICTIM ONE"), famous convicted felon and lobbyist Jack Abramoff and his associates, and politicians involved with NAC's AML Bitcoin project. Those audio recordings also include telephone calls with customers that would demonstrate that I took steps to ensure my business operated honestly and legally, and was not a scheme to defraud.

6. Before the government seized the Computer in September 2018, I had hired a third party service provider in Las Vegas, Nevada, named The Office Squad ("Office Squad"), to process the audio recordings from the telephone system to the Computer. Representatives from the

Declaration of Rowland Marcus Andrade in Support of Motion for Entry of An Order to Preserve Evidence

1  Office Squat told me they completed processing the audio recordings and stored them on the
2  Computer. The Computer was the only computer I owned or operated in NAC's Las Vegas office
3  in 2018.
4        7.      From 2018 to the present, on information and belief, FBI agents have been in
5  contact with representatives from the Office Squad. Representatives from the Office Squad told
6  me that FBI agents directed them not to communicate with me or inform me of their involvement.
7  As a result, I was unable to secure a written statement from the Office Squad regarding these
8  events, nor was I able to obtain the return of any email communications pertaining to the
9  recordings or the recordings themselves from the Office Squad.
10       8.      Upon receiving the damaged Computer, I immediately sent it to Pathway Forensics
11 ("Pathway"), a digital forensics company owned by a retired FBI agent, for inspection.
12       9.      Forensics expert Terry Landry signed an affidavit regarding the contents of the
13 Computer as Pathway examined it in May 2020. A true and correct copy of that affidavit is
14 attached hereto as Exhibit C.
15       10.     As set forth in Exhibit C, Landry determined that no audio files remained on the
16 Computer as Pathway received it in May 2020, nor was there any access since November 2018,
17 indicating that the government removed all the audio recordings from the Computer before
18 returning it to me.
19       11.     The government also seized documents from my home office in Texas in March
20 12, 2020. However, the government left financial records, copies of issued checks, payments to
21 service providers, and other records of legitimate payments of AML Bitcoin-related expenses from
22 the Wells Fargo bank account ending in 9668 identified in the Complaint. True and correct copies
23 of these documents, including pay stubs and expense receipts for my business, and a letter from
24 my accountant to Karl Ruzicka to the custodian of the "DSA Account" identified in paragraph 12
25 of the Complaint authorizing the transfer to NAC's Wells Fargo bank account, are attached hereto
26 as Exhibit D. The Complaint omits any mention of these exculpatory documents and financial
27 records, which demonstrate that AML Bitcoin was a legitimate business and not a scheme to
28 defraud customers.

12. On information and belief, the government's criminal investigation and civil forfeiture Complaint against me are related to an extortion scheme perpetrated by Jack Abramoff and his associates both in and outside the federal government.

13. This scheme began when Abramoff and several associates, including Dillman, came to me in 2017 offering their help to develop AML Bitcoin partnerships with government officials. I hired several of his associates including Japheth Dillman, whom I hired as a "Chief Strategy Officer" to assist in developing those business relationships.

14. Later, however, from around October of 2019 to around August of 2019, Abramoff tried to get me to sell my business interests and intellectual property for $100 million, and as part of that sale to pay Abramoff himself a $40 million finder's fee. On August 12, 2019, I refused Abramoff's deal. The IRS began an audit of my business three days later.

15. On August 20, 2019, Jack Abramoff's associate David Cohen sent me a long email urging me to accept Abramoff's buyout deal. A true and correct copy of that email is attached hereto as Exhibit E.

16. The August 20 letter included the statement: "If you let this life preserver float away, for whatever reason, you can imagine on your own the possible bad outcomes several of which I have listed at the bottom of this email in blue. I am in no way threatening you; I am trying to present you with possible outcomes so you can make a rational and unemotional decision." The bad outcomes listed at the bottom of the email included the federal government seizing my patents, other companies, and assets under asset forfeiture law.

17. Eight days later, when I still refused to accept Abramoff's deal, Cohen sent another long email with the subject line "Jack is on a plane but I wanted to send you this." A true and correct copy of that email is attached hereto as Exhibit F. In that email, Cohen wrote: "And what happens if the IRS or the DoJ decide to pursue asset forfeiture even before you are convicted of or plead to anything (without the money required to mount a defense against the federal government)? They do that all the time, as you might know. If they do so here, the project is dead. No one will get anywhere near this project."

18. The specific allegations of the Complaint concern events in which Abramoff and his associates were intimately involved.

19. For example, the purchases of AML Bitcoin Tokens that the government erroneously refers to in the Complaint as "investments" were made by a company named Block Bits Capital, LLC ("Block Bits"), apparently using Boyer's money.

20. In September 2017 and again in April of 2018, Dillman attempted to get me to join Block Bits, and shared with me a list of the owners. True and correct copies of those letters from Dillman are attached hereto as Exhibit G.

21. One of the companies listed as an owner of Block Bits in Exhibit G is Landfair Capital Consulting, Inc. ("Landfair"). As reported by the news media, Landfair is a company founded by Abramoff's relatives that has been used as a shell to hide Abramoff's business interests. *See* Dkt. No. 18 at 35 (Ex. C).

22. The IRS agent who verified the Complaint, Bryan Wong, is also, on information and belief, an associate of Abramoff's. My basis for this belief is that Abramoff introduced a potential customer to me by the name of "Bryant Lee," who asked several unusual questions about the nature of AML Bitcoin. I later learned of information indicating that "Bryant Lee" was an alias used by Wong to investigate my business. Based on the connection between "Bryant Lee" and Abramoff and public knowledge of Abramoff's extensive contacts within the federal government, I believe there is a high likelihood that "Bryant Lee" is in fact agent Bryan Wong.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 10th day of June, 2020, at Missouri City, Texas.

_____
Rowland Marcus Andrade