ROWLAND MARCUS ANDRADE
9414 Plaza Point Drive
Missouri City, Texas 77459   USA

In Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ONE PARCEL OF REAL PROPERTY LOCATED AT 9414 PLAZA POINT DRIVE, MISSOURI CITY, TEXAS 77459,<br><br>　　　　Defendant. | Case No. 3:20-cv-2013-VC<br><br>**CLAIMANT ROWLAND MARCUS ANDRADE'S OPPOSITION TO PLAINTIFF UNITED STATES' MOTION TO STAY**<br><br>Judge:　　　Hon. Vince Chhabria<br><br>Trial Date:　None Set<br><br>Hearing Date:　July 1, 2020 at 1:30 p.m. |
| ROWLAND MARCUS ANDRADE,<br><br>　　　　Claimant. | |
| SOLMAZ ANDRADE,<br><br>　　　　Claimant. | |
| WILMINGTON SAVINGS FUND SOCIETY, FSB as trustee for IRP FUND II TRUST 2A,<br><br>　　　　Claimant. | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................... 2

ARGUMENT ........................................................................................................................................ 5

   A.   The government cannot show that civil discovery will adversely affect a related criminal investigation. ........................................................................................................................... 6

   B.   To the extent civil discovery could adversely affect a criminal investigation, a protective order will allow discovery to proceed. ...................................................................................... 8

   C.   If the Court grants a stay, it should be limited to 30 days, and require the government to proceed with its criminal filing without delay. ............................................................................ 9

CONCLUSION .................................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Landis v. N. American Co.*,
  299 U.S. 248 (1936) .................................................................................................................. 6

*United States v. $177,844.68 in U.S. Currency*,
  Nos. 2:13-cv-100 and 2:13-cv-947, 2015 WL 355495 (D. Nev. Jan. 27, 2015) ....................... 7, 8

*United States v. All Funds ($357,311.68) Contained in Northern Trust Bank of Florida Account Number 7240001868*,
  No. 3:04-cv-1476, 2004 WL 1834589, (N.D. Tex. Aug. 10, 2004) ............................................ 6

*United States v. Approximately $104,770 in U.S. Currency*,
  No. 11-cv-249-MMC, 2011 WL 2472573 (N.D. Cal. June 22, 2011) .................................. 6, 10

*United States v. Real Property and Improvements Located at 1419 Camellia Drive, East Palo Alto, Cal.*,
  No. 09-cv-2577-CW, 2009 WL 3297321 (N.D. Cal. Oct. 13, 2009) .......................................... 5

*United States v. Sum of $70,990,605*,
  4 F. Supp. 3d 209 (D.D.C. 2014) .......................................................................................... 5, 8

**Statutes**

18 U.S.C. § 981(g)(1) ................................................................................................................... 5

18 U.S.C. § 981(g)(3) ................................................................................................................ 6, 8

18 U.S.C. § 981(g)(4) ................................................................................................................... 5

**Rules**

Fed. R. Civ. P. 11(c) .................................................................................................................. 1, 9

Local Rule 7-3(a) ......................................................................................................................... 1

# INTRODUCTION

Claimant Rowland Marcus Andrade, under Local Rule 7-3(a) and the Court's June 4, 2020, Order (Dkt. No. 30), hereby opposes the United States' Motion to Stay. (Dkt. No. 26-3).

The government should not be allowed to stay this case without presenting evidence sufficient to support its allegations. The government's Complaint alleges that I committed wire fraud by selling a scam cryptocurrency named AML Bitcoin to customers, and that I used money from investors to buy the defendant property rather than to develop AML Bitcoin. But AML Bitcoin is demonstrably not a scam; it is an innovative cryptocurrency with biometric ID verification and transaction monitoring features to prevent illegal uses of cryptocurrency such as money laundering—the AML in "AML Bitcoin" stands for "Anti-Money-Laundering." It is protected by various patents and patent applications with more foreign patents, and it launched in its full-featured form on April 12, 2020. For this reason and others, I have already served a Rule 11 motion for sanctions on the government on June 13, 2020, and I intend to file it with the Court if the government does not withdraw its complaint before the Rule 11(c)(2) safe harbor period expires. Granting the government's request for a stay would allow it to evade scrutiny of its vindictive and woefully inadequate pre-suit investigation in violation of the Federal Rules of Civil Procedure.

There is no reason that discovery concerning whether AML Bitcoin is a fraud would interfere with any ongoing criminal investigation that has lasted over 2 years already. All that information is public and technological in nature; it cannot and does not depend on secret witnesses and informants. There is also no reason that discovery concerning the more specific allegations of the complaint would interfere with any ongoing criminal investigation. I know the identities of "J.D." and "VICTIM ONE," because I have financial records that match the transactions in the Complaint exactly. The events alleged in the Complaint all happened between January and May 2018, and so discovery into those events cannot interfere with any investigation of current activities. The government simply cannot meet its burden to show that discovery into technological questions and events that occurred more than two years ago would interfere with an existing criminal investigation.

If the Court is at all persuaded by the government's *ex parte* submissions, it should still deny the stay and allow the case to proceed under an appropriate protective order. If AML Bitcoin is not a scam, the government's case falls apart. Even if discovery into the government's witnesses could interfere with an existing criminal investigation, discovery into the threshold question of the government's evidence that, "[t]o date, [I] and [my company] have not made any meaningful progress towards developing AtenCoin, AML Bitcoin, or ABTC" (Dkt. No. 1 at ¶ 16) cannot possibly interfere with an existing criminal investigation.

## STATEMENT OF FACTS

The government filed the Complaint in this case on March 23, 2020. Dkt. No. 1. The Complaint alleges that I purchased the defendant property at 9414 Plaza Point Drive, Missouri City, Texas—which is my personal residence, and which I own jointly with my wife and co-claimant Solmaz Andrade—with the proceeds from wire fraud, and that the purchase was a form of money laundering. Dkt. No. 1 at ¶¶ 19-21. To support its allegations of wire fraud, the Complaint alleges that I and my close associates, including an individual identified as "J.D.," engaged in a scheme to defraud customers by inducing them to "invest" in a cryptocurrency through fraudulent statements without ever developing the cryptocurrency. Dkt. No. 1 at ¶¶ 8-11, 16. To support its allegations of money laundering, the Complaint identifies a series of transactions allegedly tracing the money invested by an individual identified as "VICTIM ONE" from his "investment" to the purchase of the defendant property. Dkt. No. 1 at ¶¶ 10, 12-15. None of the paragraphs of the Complaint detailing these financial transactions explain how any of them were "designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds of" the alleged wire fraud. *See* Dkt. No. 1 at ¶¶ 10, 12-15, 20.

The allegations of wire fraud are, however, demonstrably false. First, "J.D.," an individual named Japheth Dillman, was not acting on behalf of myself or my company NAC Foundation, LLC when he solicited money from "VICTIM ONE," an individual named Benjamin Boyer. Declaration of Rowland Marcus Andrade in Opposition to the Government's Motion to Stay ("Andrade Decl.") at ¶¶ 2-4. VICTIM ONE/Boyer invested in Dillman's company, Block Bits AML Holdings (an equity fund), but the money apparently went into an account for Dillman's

other company Block Bits Capital. Block Bits Capital then used Boyer's money to purchase AML Bitcoin Tokens. Andrade Decl. at ¶¶ 5-7, Exs. 2-3. The Complaint tacitly admits this when it states that "VICTIM ONE's" money was wired to an account called the "BBC" account; "BBC" stands for, though the Complaint never mentions it, "Block Bits Capital." Dkt. No. 1 at ¶ 10. I never had any interest in Block Bits Capital, and refused to become part of it when Dillman asked me to. Andrade Decl. at ¶ 6.

Second, most of the purportedly false statements the government alleges that I or Dillman made are in fact true. The AML Bitcoin cryptocurrency does "operate using biometric verification mechanisms to render the cryptocurrency compliant with anti-money laundering regulations, 'know your customer' regulations, and various rules governing the financial industry set forth in the PATRIOT Act." *Compare* Dkt. No. 1 at ¶ 8 to Andrade Decl. at ¶¶ 12-15, Ex. 7. I and my associates did have business arrangements with government agencies and ports; in April 2018, we met with Port of San Francisco officials and then-lieutenant governor Gavin Newsom to discuss applications for AML Bitcoin and its identify verification technology. *Compare* Dkt. No. 1 at ¶ 9 to Andrade Decl. at ¶¶ 19-20, Exs. 9-10. The AML Bitcoin cryptocurrency was under development in January 2018, and millions of AML Bitcoin Tokens had in fact been successfully sold. *Compare* Dkt. No. 1 at ¶ 11 to Andrade Decl. at ¶¶ 17-18. And most importantly, I and the NAC have made meaningful progress towards developing AtenCoin, AML Bitcoin, and "ABTC." AtenCoin, a predecessor to AML Bitcoin, was already developed and launched in 2015. Andrade Decl. at ¶ 13. AML Bitcoin Tokens, which are listed on cryptocurrency exchanges with the symbol "ABTC," were created through an Initial Coin Offering in October 2017, and are publicly traded on major cryptocurrency exchanges today. Andrade Decl. at ¶¶ 15-16. And the full-featured AML Bitcoin went into public beta-testing in November 2019, before launching on April 12, 2020 and is currently listed on an Exchange today. Andrade Decl. at ¶¶ 21-22.

Other statements alleged in the Complaint are implausible. AML Bitcoin's terms and conditions, and its purchase agreement that customers were required to sign before buying AML Bitcoin Tokens, are clear that AML Bitcoin Tokens are not an "investment" in the company and are not backed by any asset. *See* Dkt. No. 18 at Exs. J, N. "VICTIM ONE" thus could not have

reasonably believed that "his funds would be used to further the development of the cryptocurrency." Dkt. No. 1 at ¶ 11. For that matter, as "VICTIM ONE's" "investments" were paid to Block Bits Capital and not NAC, he would have no reason to believe his funds were being used to develop AML Bitcoin. Similarly, I never promised investors in 2018 that the launch of full-featured AML Bitcoin was "months away," because there was too much software development to be done at the time. Andrade Decl. at ¶ 18. I did anticipate that AML Bitcoin would launch sooner than it did in a testing environment, but the delays were largely due to the government's vindictive interference in my business—a factor out of my control, and certainly not part of any scheme to defraud. Andrade Decl. at ¶ 18.

The Complaint also omits, among many relevant facts, one key piece of information that refutes any alleged scheme to defraud: the fact that I offered to refund Boyer/"VICTIM ONE's" money in full as soon as I heard that there was a possibility that Dillman misrepresented the cryptocurrency to Boyer, and Boyer did not accept the refund. My compliance attorney, Chris Ray, attempted to reach out to Boyer, Dillman, and their associate David Mata in late 2018. Andrade Decl. at ¶ 8. Boyer never returned Ray's calls; as we found out later according to Boyer, Dillman had been instructing Boyer to not accept calls from me or my attorney. Andrade Decl. at ¶ 10. I emailed Mata and Dillman in December 2018 and January 2019, saying that Boyer was entitled to a full refund of his AML Bitcoin Tokens and that I would no longer do any business with Block Bits Capital. Andrade Decl., Ex. 5. But because Boyer had already sold his AML Bitcoin Tokens to Dillman, he never accepted the refund, returned or calls, or our emails.

In view of all these facts, I and my wife filed timely Verified Claims for our property (Dkt. Nos. 9-10), and then I filed a detailed Answer to the Complaint with exhibits supporting the above facts on May 18, 2020. Dkt. No. 18. I moved on May 26, 2020, to proceed with discovery immediately so I could determine the basis for the government's complaint. Dkt. No. 22. The government responded by filing an administrative motion to seal *ex parte* evidence, attaching but not filing this motion to stay, on May 28, 2020, amending its motion on May 29, 2020 (Dkt. Nos. 25-26). I opposed the government's motion to seal *ex parte* evidence in support of its motion to stay on June 1, 2020. Dkt. No. 28. On June 4, 2020, the Court granted my request for a full 14

days to respond to the motion to stay, and admonished the government to "conduct a careful, responsible, and conservative assessment of what truly cannot be disclosed to Andrade." Dkt. No. 30. Despite that Order, the government has not amended its motion to stay or produced any additional evidence to me supporting its motion to stay. Andrade Decl. at ¶ 24.

I also filed or served two additional motions since the Court's June 4 Order. First, I filed a motion for a protective order to preserve evidence on June 10, 2020 (Dkt. No. 31), primarily in light of the fact that I received in May 7th 2020 a computer the government had seized from my Las Vegas offices years earlier, with all audio recording files removed. Dkt. No. 31 at 2-3. Second, I served but have not yet filed a motion for sanctions and dismissal of the Complaint under Federal Rule of Civil Procedure 11(c), because the government refuses to produce any evidence of the allegations in its Complaint and, as discussed above, the evidence in my possession indicates that that the government lacks any evidentiary basis for its factual allegations. Andrade Decl. at ¶ 25, Ex. 11.

## ARGUMENT

In order to stay this case under 18 U.S.C. § 981(g)(1), the government must show "that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." It is the government's burden to show the necessity of staying a case under Section 981(g)(1). *See United States v. Real Property and Improvements Located at 1419 Camellia Drive, East Palo Alto, Cal.*, No. 09-cv-2577-CW, 2009 WL 3297321, at *2 (N.D. Cal. Oct. 13, 2009). The term "related criminal investigation" means "an actual [] investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made." 18 U.S.C. § 981(g)(4). There is no "related criminal case," as the government has not begun any criminal proceedings against me or Dillman. Andrade Decl. at ¶ 23. It is not enough for the government to show that the civil forfeiture case is related to an existing criminal investigation; it must also show that civil discovery would adversely affect the related criminal investigation. *See United States v. Sum of $70,990,605*, 4 F. Supp. 3d 209, 212 (D.D.C. 2014).

In addition, even if the government can show that some civil discovery would interfere with an ongoing criminal investigation, the Court may deny a motion to stay "if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of the opposing party to pursue the civil case." 18 U.S.C. § 981(g)(3). And if the Court determines that a stay is warranted, that stay must be limited in time; indefinite stays may not be granted. *United States v. Approximately $104,770 in U.S. Currency*, No. 11-cv-249-MMC, 2011 WL 2472573, at *2 (N.D. Cal. June 22, 2011) (citing *Landis v. N. American Co.*, 299 U.S. 248, 257 (1936)).

A.  **The government cannot show that civil discovery will adversely affect a related criminal investigation.**

The government's public motion offers no explanation whatsoever of how civil discovery in this case would adversely affect its criminal investigation. Dkt. No. 26-3 at 3. Indeed, the government's motion could have been copied and pasted from any previous motion to stay, with only the names of the parties and attorneys changed. The government offers no explanation for why "the underlying criminal investigation and/or trial is time sensitive," or why the disclosure of information to me "would adversely affect the ability of the government to conduct its related criminal investigation and associated criminal proceedings." Dkt. No. 26-3 at 3. The "criminal investigation and/or trial" in the government's motion is particularly telling, as **there is no pending criminal trial** that could be adversely affected. Andrade Decl. at ¶ 23. The government appears to have simply copied its template into a motion and filed it, hoping that the Court would rubber-stamp it.

But conclusory speculation cannot support a motion to stay under Section 981(g). In *United States v. All Funds ($357,311.68) Contained in Northern Trust Bank of Florida Account Number 7240001868*, No. 3:04-cv-1476, 2004 WL 1834589, at *2 (N.D. Tex. Aug. 10, 2004), the government moved to stay based on claims that allowing the civil forfeiture case to proceed would adversely affect a criminal investigation because it would "give [the claimants] full discovery rights into their criminal investigation before they are formally charged," and would "permit the Claimants to assert their Fifth Amendment rights to avoid responding to discovery requests."

While these are still more specific arguments than the government has provided here, the court denied the government's motion in *All Funds*, explaining that "[u]nder either of the Government's theories, **every** civil forfeiture case with a related criminal investigation is entitled to a stay. Such speculative and conclusory theories undercut the requirement of section 981(g) **that the Government actually show that civil discovery will adversely affect its ability to conduct the criminal investigation**." *Id.* (emphasis in original).

The threshold issue in this civil forfeiture action is technological in nature—whether AML Bitcoin is a real product or a scam—and the parties can proceed with civil discovery without any adverse effect on any criminal investigation. In that sense, the present case is like *United States v. $177,844.68 in U.S. Currency*, Nos. 2:13-cv-100 and 2:13-cv-947, 2015 WL 355495, at *7 (D. Nev. Jan. 27, 2015), where the court denied the government's motion to stay because a protective order could protect any confidential information related to the government's criminal investigation. In that case, the core issues in both the civil forfeiture and criminal actions were either technological or focused on the Claimants' knowledge: whether the chemical structure of substances in the Claimants' possession were substantially similar to a Schedule I controlled substance, and whether the Claimants knew or believed that the products were controlled substance analogues. *Id.* Because that question did not require discovery into any confidential evidence or informants, the court denied the government's motion to stay and allowed discovery to proceed on those issues. *Id.* Though the technological question here concerns mathematical algorithms and software rather than chemicals, the present case is identical in that the core issues is whether AML Bitcoin is a real technology. At a minimum, the Court should therefore deny the stay and enter a protective order permitting discovery to go forward on the government's evidence as to the status of AML Bitcoin's development.

Still, the government has not offered a reason that any protective order is needed. If, for example, the government claims it needs to protect the identities of confidential informants, that claim fails because the government made the identity of the individuals in the Complaint clear. The only individual involved with my business who took actions like those described in the complaint with the initials "J.D." is Japheth Dillman. Andrade Decl. at ¶ 2. The government

1  identifies the account J.D. controlled as the "BBC" account; this can only stand for Block Bits
2  Capital. Dkt. No. 1 at ¶ 10; Andrade Decl. at ¶ 5. Boyer already sent me the Distribution
3  Statements for Block Bits showing his investments in January 2018 matching the amounts and
4  dates of "VICTIM ONE's" transactions in the Complaint; they are attached to the Answer already
5  as part of Exhibit M. Dkt. No. 18, Ex. M. Since the identities of all the relevant parties are known
6  the government cannot show that civil discovery will compromise their identity. *See All Funds*,
7  2004 WL 1834589 at *2.

8      The sole argument the government makes specific to this case is to point to my extensive
9  proposed discovery requests and claim they are too burdensome. Dkt. No. 26-3 at 3. But that is a
10 reason to limit discovery, not to stay the case. In *$177,844.68 in U.S. Currency*, the government
11 made a similar complaint that the claimants served broad ranging discovery requests. 2015 WL
12 355495, at *7. The court rejected that argument, explaining that the claimants' counsel was willing
13 to work with the government to reach a mutual agreement on the scope of discovery. *Id.* Similarly
14 here, I am willing to work with the government to reach an agreement on the scope of discovery, if
15 the government can provide a basis for declaring certain categories of discovery off-limits. Again,
16 a suitable protective order would allow discovery to proceed.

17 **B.     To the extent civil discovery could adversely affect a criminal investigation, a**
18       **protective order will allow discovery to proceed.**

19     Even if some of the evidence submitted *ex parte* shows a risk that civil discovery might
20 adversely affect some aspect of the criminal investigation, the Court should cure that risk through
21 a protective order rather than a stay. 18 U.S.C. § 981(g)(3) allows the Court to determine that a
22 stay is unnecessary if a protective order would protect the interests of the government in protecting
23 its pending criminal investigation. As discussed above, the identities of J.D./Dillman and VICTIM
24 ONE/Boyer are not secret, and the technological issues concerning AML Bitcoin cannot require
25 discovery into confidential informants or information. At a minimum, the Court should allow
26 discovery to proceed into these issues, even if it imposes a protective order to prevent discovery
27 into the hypothetical confidential aspects of the government's investigation. *See Sum of*
28 *$70,990,605*, 4 F. Supp. 3d at 214 ("There are several areas in which the claimants can seek

discovery that would not implicate the sensitive information that the government seeks to protect.").

A stay is particularly inappropriate here where I have already served a Rule 11 motion for sanctions based on the government's failure to perform an adequate pre-suit investigation and failure to produce an evidentiary basis for the allegations of the Complaint. Federal Rule of Civil Procedure 11 states the attorney signing a complaint is certifying that, among other things, "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." None of the allegations in the Complaint here were made on information and belief, or were identified as likely having evidentiary support after discovery. Dkt. No. 1. By signing the Complaint, then, Assistant U.S. Attorney Kaltsas certified to this Court that each of the factual allegations in the Complaint had evidentiary support. At an absolute minimum, the Court should order the government to produce that evidence to demonstrate that AUSA Kaltsas and the U.S. Attorney's Office complied with their Rule 11 obligations. Because based on the government's allegation that "[I] and the NAC have not made any meaningful progress towards developing AtenCoin, AML Bitcoin, or ABTC" (Dkt. No. 1 at ¶ 16)—two products that were already completed and released in 2015 (AtenCoin) and 2017 (ABTC), and a third in public beta testing in November 2019 and completed in April 2020 (AML Bitcoin)—the government clearly did not perform a proper pre-suit investigation and lacks evidence to support its vindictive claims.

C. **If the Court grants a stay, it should be limited to 30 days, and require the government to proceed with its criminal filing without delay.**

The events at the heart of this case occurred nearly two and a half years ago, in January 2018. There is no legitimate reason for the government to have waited this long to begin its action against me—though as noted in my motion to preserve evidence, it does not seem to be a coincidence that this litigation began shortly after I turned down famous lobbyist and convicted felon Jack Abramoff's extortionate demand to sell my business, as part of which his associate threatened that my business would be ruined by civil forfeiture actions. *See* Dkt. No. 31 at 3-5.

Still, if the Court is at all inclined to grant a stay, indefinite stays are not permitted. *Approximately $104,770*, 2011 WL 2472573, at *2. It has been three months already since the government has filed the Complaint. It should not be allowed to maintain this action and its investigation of me indefinitely while denying me any opportunity to defend my innocence. Accordingly, any stay should be limited to a very short time, preferably 30 days or less, and require the government to proceed with its criminal charges without further delay.

## CONCLUSION

The government filed an intentional frivolous civil forfeiture claim against my personal residence in the midst of a pandemic, and now moves to stay to avoid having to produce the evidence it was required to have before filing the Complaint and to conceal their own actions leading up to the filing of the compliant. It offers no explanation of how civil discovery here will interfere with its criminal investigation, especially regarding the core technological issues of this case and the known individuals identified in the Complaint. The government has already destroyed exculpatory evidence and offered inconsistent explanations of the evidence in its possession (*See* Dkt. No. 31 at 7).

Whether the government's actions are explained by sloppiness or malice, the Court should step in and protect my civil rights to due process by denying the motion to stay and requiring the government to answer the issues raised by my motion to preserve evidence, my motion for Rule 11 sanctions, and my proposed discovery requests. For the foregoing reasons, I therefore respectfully request that the Court deny the government's motion to stay in its entirety, or at a minimum to enter a protective order permitting discovery to proceed regarding the AML Bitcoin technology, and regarding Dillman and Boyer's activities alleged in the Complaint.

| | | |
|---|---|---|
| 1 | Dated: June 18, 2020 | Respectfully submitted, |
| 4 | | By: *R. Marcus Andrade* |
| 5 | | Rowland Marcus Andrade<br>In Pro Se and Claimant |