MANUEL A. MEDRANO (SBN 102802)
 mmedrano@zuberlawler.com
**ZUBER LAWLER & DEL DUCA LLP**
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

BRIAN J. BECK (*pro hac vice*, IL BN 6310979)
 bbeck@zuberlawler.com
**ZUBER LAWLER & DEL DUCA LLP**
135 S. LaSalle St., Suite 4250
Chicago, Illinois 60603
Telephone: (312) 346-1100
Facsimile: (213) 596-5621

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>ONE PARCEL OF REAL PROPERTY LOCATED AT 9414 PLAZA POINT DRIVE, MISSOURI CITY, TEXAS 77459,<br><br>            Defendant. | Case No. 3:20-cv-2013-RS<br><br>**REPLY IN SUPPORT OF MOTION OF ROWLAND MARCUS ANDRADE FOR A PROTECTIVE ORDER TO PRESERVE EVIDENCE**<br><br>*Filed concurrently with Reply Declaration of Rowland Marcus Andrade*<br><br>Judge:   Hon. Richard Seeborg<br>Trial Date:   None Set<br>Hearing Date: July 23, 2020, 1:30 p.m. |
| ROWLAND MARCUS ANDRADE,<br><br>            Claimant. | |
| SOLMAZ ANDRADE,<br><br>            Claimant. | |
| WILMINGTON SAVINGS FUND SOCIETY, FSB as trustee for IRP FUND II TRUST 2A,<br><br>            Claimant. | |

1         Case No. 3:20-cv-2013-RS
REPLY IN FURTHER SUPPORT OF CLAIMANT ROWLAND MARCUS ANDRADE'S
MOTION FOR A PROTECTIVE ORDER TO PRESERVE EVIDENCE

3161-1002 / 1640138.2

# INTRODUCTION

Though the government's agents deny that they deleted any audio recordings on Claimant Rowland Marcus Andrade's computer, their denials lack corroborating evidence and are not credible. Agents Fryxell and Hodges claim that they did not damage the computer before shipping it, but fail to attach any photographs taken during their execution of the search warrant to corroborate their declaration. It is standard operating procedure for agents to take photographs of the venue where a warrant is executed as well as the items that are seized. Agent Wales states that photographs of the computer's damaged condition were taken, but again he does not attach them to his declaration. None of the four agents who submitted declarations performed the actual forensic imaging of the computer; Agent Wales admits that his predecessor conducted the imaging and can offer no more than hearsay to suggest that FBI protocols were followed correctly.

But most importantly, Agents Fryxell, Hodges, and Wynar attempt to deceive the Court by implying they had no contact with the Office Squad, the company hired to maintain and archive NAC Foundation, LLC's ("NAC's") audio recordings, when they in fact did. Agent Fryxell's declaration does not mention the Office Squad at all. Agent Hodges's declaration states that she did not communicate with any owner, manager, or employee at the Office Squad. And Agent Wynar's declaration, in addition to stating that he did not communicate with anyone at the Office Squad, adds his subjective belief that the Office Squad's services do not include audio file transcription or recording. However, the CEO of the Office Squad, Dida Clifton, informed Andrade in October 2018 that the Office Squad was served with the same search and seizure warrant used to search NAC's office, and that they received with the subpoena Agents Fryxell and Hodges' business cards. That email is attached to the accompanying reply declaration of Rowland Marcus Andrade, along with other documents demonstrating that there were indeed audio recordings on the computer when the FBI received it. While the government attempts to suggest through its agents' declarations that none of its agents contacted the Office Squad in regard to Andrade's computer files, the evidence, assuming that all the agents' declarations are literally true, shows that Agent Fryxell did in fact seize NAC's files from the Office Squad—without actually having a duly-issued warrant for the Office Squad.

1. The inconsistent agent declarations submitted by the government—and glaring omission of percipient agent declarations—only heighten the need for the Court to ensure the integrity of the evidence in this case. The first step in ensuring the integrity of this electronic evidence is to require the government to produce to the Court and to Andrade immediately the forensic image of Andrade's computer in its possession for examination and safekeeping. Such an order would not be at all burdensome, nor would it require production of any material that is confidential. There is no reason to wait for a case management order, then for the 30 days to respond under Federal Rule of Civil Procedure 34, for the government to produce this supposedly intact evidence in its possession. The Court should therefore order the government to preserve all evidence in its possession related to this case, and to produce immediately to the Court and to Andrade the forensic image of Andrade's computer described in Agent Wales's declaration.

## STATEMENT OF ADDITIONAL FACTS

The government claims that no FBI personnel caused any damage to the computer seized on September 13, 2018, that they did not have any contact with the Office Squad, and that there were no audio files on the computer when it was seized. Information obtained from the Office Squad indicates otherwise.

On October 1, 2018, Andrade emailed the Office Squad, asking them to collect and deliver contact information from his computer for several individuals. Reply Declaration of Rowland Marcus Andrade in Further Support of Motion to Preserve Evidence ("Andrade Reply Decl."), Ex. 1. The CEO of the Office Squad, Dida Clifton, responded that a couple weeks previously (*i.e.*, on or around September 13, 2018), a partner with The Office Squad "was served with a search and seizure from the FBI for [Andrade's] office and all the contents. They removed everything but the desk, shelfing [sic] and chairs." *Id.* When Andrade asked for more details, Clifton emailed him a copy of the warrant that had been left with the Office Squad, along with the business cards from Agents Cody Fryxell and Kelli Hodges, who submitted declarations in opposition to the present motion. Andrade Reply Decl., Ex. 2. Agent Fryxell's declaration does not mention the Office Squad. Dkt. No. 35-1. Agent Hodges's declaration states that she never communicated with any employee at the Office Squad concerning communications with Andrade. Dkt. No. 35-2 at ¶ 7.

3161-1002 / 1640138.2

3    Case No. 3:20-cv-2013-RS
REPLY IN FURTHER SUPPORT OF CLAIMANT ROWLAND MARCUS ANDRADE'S
MOTION FOR A PROTECTIVE ORDER TO PRESERVE EVIDENCE

Shortly before filing the present motion, Andrade emailed the general manager of the Office Squad to ask if they had any copies of the audio recordings that had been made. She responded on June 10, 2020, that she and another employee "discussed the recordings to figure out what happened. They were placed on the computer in your office. We do not recall or have a record of a copy being sent to anyone." Andrade Reply Decl., Ex. 3. When Andrade made further inquiries through his attorneys, Ms. Clifton responded that, "[a]ll the documents, files, folders, and the computer were picked up from the office Mr. Andrade has here by the FBI in 2018. We have confirmed that we have some phone recordings of NAC calls. I cannot confirm if we have all of them, how many we have, or what person called. I also cannot confirm that there was an 'policy' [sic] on how to handle these recordings from NAC." Andrade Reply Decl., Ex. 4.

Since the government filed its opposition, it has initiated criminal cases against Andrade and Jack Abramoff, and revealed that Abramoff has reached a plea agreement in exchange for his cooperation in the case against Andrade.[1] The criminal cases against Andrade and Abramoff are pending before this Court under Docket Numbers 20-cr-249 and 20-cr-260, respectively. The Securities and Exchange Commission also filed complaints against both Andrade and Abramoff, but has already agreed to a lenient settlement only requiring Abramoff to pay a total of $55,501.[2]

## ARGUMENT

The evidence presented to the Court demonstrates a significant likelihood that destruction of evidence has occurred. The Court should therefore take action to ensure the integrity of evidence related to this case as well as the now-pending criminal case against Andrade. The government's denials are simply not credible, as demonstrated by the government's failure to attach corroborating exhibits to its agents' declarations..

---

[1] *See* Department of Justice Press Release, *Lobbyist Jack Abramoff and CEO Rowland Marcus Andrade Charged with Fraud in Connection With $5 Million Initial Coin Offering of Cryptocurrency AML Bitcoin* (June 25, 2020), https://www.justice.gov/usao-ndca/pr/lobbyist-jack-abramoff-and-ceo-rowland-marcus-andrade-charged-fraud-connection-5.

[2] *See* Securities and Exchange Commission Press Release, *SEC Charges Issuer, CEO, and Lobbyist With Defrauding Investors in AML Bitcoin* (June 25, 2020), https://www.sec.gov/news/press-release/2020-145.

**A.    The Court should have serious concerns about the integrity of evidence in the government's possession.**

The Office Squad employees, who are not affiliated with Andrade and told Andrade that they do not want to be involved in this legal dispute, corroborate Andrade's account and dispute the government agents' accounts. That third-party information should raise a significant concern that the government is at a minimum mishandling evidence, if not actively destroying it.

As an initial matter, none of the four agents who submitted declarations performed the actual creation of the forensic image of the computer, nor were they the government agents who accessed the computer. Agents Fryxell, Hodges, and Wynar all state that the computer was seized and sent to the San Francisco field office, and from there to the FBI Regional Computer Forensics Laboratory ("RCFL"). Dkt. Nos. 35-1 at ¶ 8; 35-2 at ¶ 5; 35-3 at ¶ 4. Agent Wales explains FBI protocol regarding seized computers, but has no personal knowledge regarding the processing of the computer because his predecessor did the collection. Dkt. No. 35-4 at ¶ 3. Agent Wales then states that he understands that all prescribed FBI protocols were followed in this case, but offers no corroborating business records to support his claim. Dkt. No. 35-4 at ¶ 5. He also states that when the RCFL received the computer, it "photographically documented the computer's condition"—but none of those photographs were attached to the declaration. *Id.* No intake forms or other records of the processing of Andrade's computer were attached to any of the declarations. The government's denial of mishandling evidence thus amounts to nothing more than uncorroborated hearsay.

Several of the government agents' claims that can be scrutinized appear to be either false or deceptive. Agent Wynar claims to be unaware of any audio files on Andrade's computer, and claims that the Office Squad's services do not include recording of telephone calls. Dkt. No. 35-3 at ¶ 6. But the Office Squad's founder Ms. Clifton wrote that it did have recordings of NAC phone calls, and that while it has some phone recordings still, any that were saved to the computer were taken by the FBI in the September 2018 search. Andrade Reply Decl., Ex. 4. Agents Hodges and Wynar state that they never had any contact with the Office Squad, while Agent Fryxell is curiously silent on the subject. Dkt. Nos. 35-1; 35-2 at ¶ 7; 35-3 at ¶ 6. But Ms. Clifton obtained

5                                                     Case No. 3:20-cv-2013-RS
REPLY IN FURTHER SUPPORT OF CLAIMANT ROWLAND MARCUS ANDRADE'S
MOTION FOR A PROTECTIVE ORDER TO PRESERVE EVIDENCE

3161-1002 / 1640138.2

Agents Fryxell and Hodges' business cards along with the search and seizure warrant from October 2018, demonstrating that the agents did in fact contact the Office Squad's employees. Andrade Reply Decl., Ex. 2.

The physical damage to the computer also indicates mishandling of evidence. Agent Fryxell claims to have been responsible for shipping the computer to the San Francisco field office, and states that when he shipped the computer it was undamaged. Dkt. No. 35-1 at ¶ 8. Agent Wales states that when the RCFL received the computer, it was damaged. Dkt. No. 35-4 at ¶ 5. At a minimum, then, Agent Fryxell (or another unknown agent in the chain of custody in the San Francisco field office, who presumably shipped the computer from the San Francisco field office to the Silicon Valley RCFL), inadequately packed the computer for shipping such that it was damaged in transit. Again, without any photographs or records of the government's actions, it is impossible to pinpoint when or how exactly the damage occurred, but unquestioningly it occurred while the computer was in the government's custody.

Andrade explained in his declaration that audio recordings of telephone calls were stored on the computer, and are no longer there. Dkt. No. 31-1 at ¶¶ 6, 10. The Office Squad employees, who have no interest in this case, confirmed that there were audio recordings of telephone calls stored to the computer. Andrade Reply Decl., Ex. 3. But when the computer was returned, the audio recordings were gone. Dkt. No. 31-4 at ¶ 9. The government offers no records or firsthand knowledge to support its claim that the government did not tamper with the computer. Based on the evidence presented, the Court should conclude that there is at least a likelihood that evidence was mishandled or destroyed, and have a high level of concern "for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence." *Stanley v. Ayers*, No. 07-cv-04727-EMC, 2018 WL 4488298, at *2 (N.D. Cal. Sept. 17, 2018).

**B.**     **The Court should enter an order to preserve the evidence in question, including at a minimum requiring immediate production of the forensic image of the computer.**

As discussed above, the first element of the *Stanley* three-factor test weighs in favor of an order to preserve evidence. The remaining two factors of the test—irreparable harm likely to result

6    Case No. 3:20-cv-2013-RS
REPLY IN FURTHER SUPPORT OF CLAIMANT ROWLAND MARCUS ANDRADE'S
MOTION FOR A PROTECTIVE ORDER TO PRESERVE EVIDENCE

3161-1002 / 1640138.2

absent an order directing preservation, and the capability of the party to maintain the evidence sought to be preserved—also weigh in favor of an order preserving evidence.

It would cause Claimant irreparable harm if the audio recordings at issue were destroyed. The government largely ignores the irreparable harm factor, arguing only that because there was no destruction of evidence, there is no irreparable harm. Dkt. No. 35 at 6. But the audio recordings are critical and exculpatory as to at least two key issues in this case: (1) did Andrade authorize "J.D." (and more generally Jack Abramoff and his cronies) to make the allegedly fraudulent statements to "VICTIM ONE" that were allegedly part of the "scheme to defraud," and (2) did Andrade actually make false statements to AML Bitcoin customers to induce them to buy AML Bitcoin tokens? Dkt. No. 31-1 at ¶ 5. Especially as to the latter issue, The Office Squad set up calls with AML Bitcoin Token purchasers and completed quality and assurance forms to ensure customers were not misled. Andrade Reply Decl. at ¶ 6. Recordings of these calls would provide strong evidence that Andrade was not involved in a scheme to defraud, refuting the government's allegations of wire fraud. There are no backup copies of these audio recordings; there is only the limited selection that the Office Squad still has available. Andrade Reply Decl., Exs. 3-4. If this evidence is destroyed, it cannot be recovered, clearly impacting Andrade's ability to defend himself in this case.

The third factor weighs in favor of an order to preserve evidence as well, especially in view of Agent Wales's declaration stating that the government made a forensic image of the computer. Dkt. No. 35-4 at ¶ 5. A forensic image is simply a computer file; it would be extremely easy for the government to put a copy of the forensic image on a hard drive and produce it. All the documents on the computer belong to Andrade, so there is no burden on the government to review the forensic image for any confidentiality issues. The government has offered no argument whatsoever as to why it should not have to immediately produce the forensic image of the computer, when it will have to do so later in the course of discovery anyway.

As for the rest of the physical and documentary evidence in the government's possession, this case's connection to Jack Abramoff, who is well known for his many connections within the federal government, raises additional concerns about evidence integrity. Even though the

7   Case No. 3:20-cv-2013-RS
REPLY IN FURTHER SUPPORT OF CLAIMANT ROWLAND MARCUS ANDRADE'S
MOTION FOR A PROTECTIVE ORDER TO PRESERVE EVIDENCE

3161-1002 / 1640138.2

government is pursuing criminal charges against Abramoff, his already-signed plea agreement and extraordinarily lenient SEC settlement suggest that the relevant federal agencies are cooperating with him. Why, after all, would Abramoff have threatened Andrade with civil forfeiture and criminal actions if he did not have the influence necessary to carry out those threats? *See* Dkt. Nos. 31-6, 31-7. An order to preserve this evidence simply requires the government to carry out the obligation it already has to preserve all evidence relevant to this case.

## **CONCLUSION**

The Office Squad employees informed Andrade that audio recordings were made and placed on the computer, and that the government agents who conducted the search and seizure carried it out relating to NAC's items in the Office Squad's possession. Agents Hodges and Wynar state that they have had no contact with the Office Squad, but the Office Squad had Agents Fryxell and Hodges' business cards that had been provided to them along with the September 2018 search warrant. And the government offers no corroborating evidence for its agents' declarations, even while failing to present a declaration from the unnamed agent who actually accessed the computer to make the forensic image.

The government's contradictory and incomplete evidence should cause this Court to be deeply concerned about the integrity of evidence in the government's possession. The government offers no evidence that preservation of evidence would be burdensome. Claimant Andrade therefore respectfully requests that this Court enter an order directing that (1) the government immediately produce to Claimant the forensic image of the computer; and (2) the United States, and specifically the U.S. Department of Justice, the FBI, the U.S. Treasury, the Securities and Exchange Commission, and their employees and agents, are required to preserve all physical, documentary, or other evidence in their possession, custody, or control relating to the allegations at issue in this case, including all email communications sent or received by the Plaintiff and/or any U.S. government agency and their associates whether those communications are stored in government email accounts, in personal email accounts, or in some other location. Claimant Andrade further requests, in order to avoid any risk of destruction of evidence by the executive

8    Case No. 3:20-cv-2013-RS
REPLY IN FURTHER SUPPORT OF CLAIMANT ROWLAND MARCUS ANDRADE'S
MOTION FOR A PROTECTIVE ORDER TO PRESERVE EVIDENCE

3161-1002 / 1640138.2

branch, for the United States to produce all such evidence in its possession to the Court for safekeeping in advance of formal discovery.

Dated: July 1, 2020                                  Respectfully submitted,


By:  */s/ Brian J. Beck*
MANUEL A. MEDRANO (SBN 102802)
 *mmedrano@zuberlawler.com*
**ZUBER LAWLER & DEL DUCA LLP**
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

BRIAN J. BECK (*pro hac vice*, IL BN 6310979)
 *bbeck@zuberlawler.com*
**ZUBER LAWLER & DEL DUCA LLP**
135 S. LaSalle St., Suite 4250
Chicago, Illinois 60603
Telephone: (312) 346-1100
Facsimile: (213) 596-5621

*Attorneys for Claimant*
*Rowland Marcus Andrade*

9    Case No. 3:20-cv-2013-RS
REPLY IN FURTHER SUPPORT OF CLAIMANT ROWLAND MARCUS ANDRADE'S
MOTION FOR A PROTECTIVE ORDER TO PRESERVE EVIDENCE

3161-1002 / 1640138.2