MANUEL A. MEDRANO (SBN 102802)
 mmedrano@zuberlawler.com
**ZUBER LAWLER & DEL DUCA LLP**
350 S. Grand Ave., 32nd Floor
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

BRIAN J. BECK (*pro hac vice*, IL BN 6310979)
 bbeck@zuberlawler.com
**ZUBER LAWLER & DEL DUCA LLP**
135 S. LaSalle St., Suite 4250
Chicago, Illinois 60603
Telephone: (312) 346-1100
Facsimile: (213) 596-5621

*Attorneys for Claimant*
*Rowland Marcus Andrade*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ONE PARCEL OF REAL PROPERTY LOCATED AT 9414 PLAZA POINT DRIVE, MISSOURI CITY, TEXAS 77459,<br><br>　　　　Defendant. | Case No. 3:20-cv-2013-RS<br><br>**NOTICE OF MOTION AND MOTION OF ROWLAND MARCUS ANDRADE FOR LEAVE TO FILE A MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S JULY 17 ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with DECLARATION OF ROWLAND MARCUS ANDRADE; DECLARATION OF BRIAN J. BECK; AND [PROPOSED] ORDER* |
| ROWLAND MARCUS ANDRADE,<br><br>　　　　Claimant. | Judge:　Hon. Richard Seeborg<br><br>Trial Date:　None Set<br><br>Hearing Date: September 3, 2020, 1:30 p.m. |
| SOLMAZ ANDRADE,<br><br>　　　　Claimant. | |
| WILMINGTON SAVINGS FUND SOCIETY, FSB as trustee for IRP FUND II TRUST 2A,<br><br>　　　　Claimant. | |

**TO UNITED STATES OF AMERICA AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 3, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Richard Seeborg, located in the United States Courthouse, San Francisco Courthouse, Courtroom 3, Rowland Marcus Andrade, by and through his attorneys, will and hereby does move this Court for LEAVE TO FILE A MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S JULY 17, 2020 ORDER.

Andrade respectfully requests that the Court grant leave to file a motion to reconsider its July 17, 2020 Order (Dkt. No. 52) by: (1) denying the government's motion to stay, and (2) striking its order denying Andrade's motion for sanctions under Fed. R. Civ. P. 11, and ordering the parties to complete briefing on that motion. The basis for Andrade's motion for leave to file under Local Civil Rule 7-9 is that: (1) a material difference in fact exists from the facts presented by the government in its declaration in support of its motion to stay, on which the Court relied in granting said motion; and (2) the Court failed to consider material facts regarding the timeline of the government's filings in this case, the relief requested by Andrade's motion for sanctions under Rule 11, and governing Supreme Court law regarding treatment of pending Rule 11 motions after a plaintiff moves for voluntary dismissal under Fed. R. Civ. P. 41. This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Rowland Marcus Andrade and Brian J. Beck filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

**TABLE OF CONTENTS**

Introduction ................................................................................................................................. 5

Statement of Issues Presented ..................................................................................................... 6

Statement of Facts ....................................................................................................................... 6

    A.  Procedural History of This Case ...................................................................................... 6

    B.  Newly Discovered Facts Regarding the Government's Motion to Stay .............................. 8

Argument.................................................................................................................................... 10

    A.  Incorrect statements and implications in the government's declaration in support of its motion to stay warrant reconsideration of the Order............................................................ 11

    B.  The Court's failure to consider material facts and law regarding Andrade's Rule 11 motion warrants reconsideration of the Order .................................................................................. 13

Conclusion.................................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ................................................................................................. 14

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384, 397 (1990) .............................................................................................. 5, 13, 14

*Moore v. Permanente Medical Grp., Inc.*,
  981 F.2d 443 (9th Cir. 1992) ................................................................................................... 13

**Rules**

Local Civil Rule 7-9 ...................................................................................................... 10, 11

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

In deciding to grant the government's motion to stay this case and to deny Claimant Andrade's motion for Rule 11 sanctions, the Court appears to have not been aware of several facts. First, the Court appears to have believed the government's decision to file the present civil forfeiture action in March 2020 without a parallel criminal indictment was an honest consequence of the COVID-19 pandemic. The government's counsel, Assistant U.S. Attorney Chris Kaltsas, stated in his declaration in support of the motion to stay that around February 10, 2020, he learned that Andrade was liquidating his equity in various assets. In subsequent discussions with Mr. Kaltsas, he clarified that the alleged liquidation had in fact occurred significantly earlier than February 2020; that was merely the date that Mr. Kaltsas personally learned of the alleged liquidation.

Second, the Court granted the motion to stay on a basis the government never requested or claimed existed. Nothing in Kaltsas's declaration in support of the government's motion to stay, or in the parties' subsequent joint status report, suggests that the government will "face a significant burden trying to conduct [] robust civil discovery while also prosecuting its criminal case." Rather, the rationale for the stay raised by the government's original motion was mooted by the indictment, and the government's new conclusory rationales presented in the joint status report are not supported by any factual evidence or sworn declarations.

Third, the Court appears to have been unaware of binding Supreme Court precedent regarding the interplay of Rules 11 and 41 of the Federal Rules of Civil Procedure. The Supreme Court case of *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990), which Andrade never had the opportunity to raise because the Court denied Andrade's Rule 11 motion as moot without further briefing, held that a Rule 11 motion is collateral to and survives even a granted motion for voluntary dismissal under Rule 41. It would therefore be an error for this Court to deny Andrade's Rule 11 motion as moot in view of the government's motions to stay and for voluntary dismissal, especially when the government has not even been required to file an opposition to it.

Fourth, the Court has not considered the fact that the government practically admitted to violating Rule 11 in its joint status report (Dkt. No. 49). In the joint status report, the government claimed that it will oppose Andrade's Rule 11 motion as untimely because discovery has not yet opened in this matter, suggesting that the government needs to obtain discovery in order to support its Complaint. But Rule 11 requires the government, like any plaintiff, to conduct a reasonable pre-suit investigation before filing a Complaint. As a matter of basic fairness and professional ethics, the Court should at least require the government to respond to the Rule 11 motion and explain why it believed it had probable cause to file this lawsuit before the Court stays or dismisses this case.

Fifth, the Court's decision to allow the government's motion for voluntary dismissal to proceed but not Andrade's motion for sanctions lacks a logical basis. The Court's explanation for allowing the motion for voluntary dismissal to proceed because of "its potential to dispose of the case entirely." Dkt. No. 52 at 2 n. 3. But Andrade's motion for sanctions has the same potential; the relief it requests is dismissal with prejudice of this lawsuit. There is no reason for the Court to permit the government's motion for dismissal to proceed but not Andrade's.

## STATEMENT OF ISSUES PRESENTED

1. Should the Court have granted the government's motion to stay when it was based on a misleading declaration regarding the timing of the government's civil and criminal filings?

2. Should the Court have denied Andrade's motion for Rule 11 sanctions while: (1) the government has failed to explain the basis for its filing, and indicated in its joint status report that further discovery was needed to demonstrate that basis; and (2) the Court continues to entertain the government's motion for voluntary dismissal?

## STATEMENT OF FACTS

**A.   Procedural History of This Case**

The government filed its Complaint in this case on March 23, 2020. Dkt. No. 1. The Complaint alleges that Andrade's residence, the defendant parcel of real estate, was purchased using the proceeds of wire fraud that Andrade committed by making false statements about his cryptocurrency, AML Bitcoin, to induce a specific "VICTIM ONE" to purchase that

1  cryptocurrency. Dkt. No. 1 at ¶¶ 8-17, 21, 24. The Complaint further alleges that Andrade's
2  purchase of the defendant parcel of real estate was a money laundering transaction intended to
3  hide the proceeds of the alleged wire fraud scheme. *Id.* at ¶¶ 22-24.
4        Andrade mailed his verified claim for the defendant property to the Clerk of this Court on
5  May 4, 2020. Dkt. No. 10. He filed his Answer to the Complaint on May 18, 2020. Dkt. No. 18.
6        From the outset of this case, Andrade has maintained that the allegations of the Complaint
7  lack adequate factual basis, even if the allegations state a cause of action for forfeiture. In
8  particular, Andrade has argued that the key factual allegation underpinning the government's
9  entire case—that Andrade and his company have made no progress in developing the AML
10 Bitcoin technology because he spent "investors"[1] money on personal property rather than software
11 development—is plainly false because AML Bitcoin went into beta testing in November 2019,
12 and launched in April 2020. Dkt. No. 18 at ¶¶ 20, 32. Andrade also maintains that he was not
13 involved in any scheme to defraud VICTIM ONE, an individual named Benjamin Boyer, because
14 he never spoke to Mr. Boyer before he purchased AML Bitcoin Tokens from an individual
15 referred to in the complaint as "J.D.," and as soon as Andrade discovered in late 2018 that J.D. had
16 potentially made misrepresentations to Boyer to induce Boyer's purchases, Andrade offered Boyer
17 a full refund. Dkt. No. 18 at ¶¶ 21, 25, 28, Exs. G and O. Each of these denials is supported by
18 publicly available documents.
19       Andrade accordingly sought accelerated discovery to determine the basis for the
20 government's claim. To that end, he filed a motion to shorten time and to immediately enter a case
21 management order on May 26, 2020. Dkt. No. 22. In response, the government moved to stay the
22 pending case based on *ex parte* evidence submitted *in camera* on May 28, 2020. Dkt. Nos. 25-26.
23 The government would not unseal its declaration in support of the motion to stay until July 2, after

---

[1] The word "investor" is in quotes because Andrade denies that alleged "VICTIM ONE" or any other purchaser of AML Bitcoin Tokens was an "investor." The terms and conditions provided to purchasers of AML Bitcoin Tokens made clear that AML Bitcoin Tokens were nothing more than a medium of exchange, with no underlying collateral, no share in profit, no debt or obligation to the Token owners, and were specifically not securities and not purchased for investment purposes. Dkt. No. 18, Ex. J at ¶¶ B.10-18, B.22.

briefing on the motion to stay was completed. Declaration of Brian J. Beck in Support of Claimant Andrade's Motion for Reconsideration ("Beck Decl.") at ¶ 3.

With the government refusing to explain the basis for its Complaint, Andrade served the government with a motion for sanctions under Fed. R. Civ. P. 11 on June 13, 2020. Dkt. No. 48-33 at ¶ 2, Ex. A. The government subsequently filed a criminal indictment against Andrade in this Court, Case No. 3:20-cr-249, on June 22, 2020, which was subsequently unsealed on June 25, 2020. The true bill is dated June 18, 2020. *United States v. Andrade*, No. 3:20-cr-249-RS, Dkt. No. 1 (N.D. Cal. June 22, 2020). Attorneys for Andrade entered notices of appearance in this case on June 26, 2020. Dkt. Nos. 37-38. Meanwhile, the safe harbor provision under Fed. R. Civ. P. 11(c)(2) was set to expire on July 6, 2020.

Andrade's attorneys reached out to opposing counsel on July 1, 2020, stating that they intended to file their Rule 11 motion unless the government either withdrew the complaint or produced the requested evidence. Dkt. No. 48-33, Ex. B. Counsel for the United States responded saying that the government would not withdraw a complaint that was already found to have probable cause for an indictment, and still would not produce or identify the evidence supporting this Complaint. *Id.* Andrade then filed his motion for sanctions, supported by extensive documentation, on July 8, 2020. Dkt. No. 48.

Slightly over a week after Andrade filed his Rule 11 motion, the government apparently decided that it would withdraw its complaint. On July 17, the government filed a motion for voluntary dismissal without prejudice. Dkt. No. 51. A mere three hours after the government filed its motion, the Court entered an order (the "Order") granting the government's motion to stay, denying Andrade's motion for sanctions without prejudice in view of the stay, but continuing to entertain the government's motion for voluntary dismissal. Dkt. No. 52.

B. **Newly Discovered Facts Regarding the Government's Motion to Stay**

The government unsealed the declaration it had filed in support of its motion to stay on July 2, 2020, by sending a copy of the declaration to Andrade's attorneys by email. That declaration included the following explanation from Assistant U.S. Attorney Chris Kaltsas as to why the government filed its civil forfeiture complaint in March 2020:

2. On or about February 10, 2020, I learned that the United States Attorney's Office for the Northern District of California was investigating a large scale cryptocurrency fraud involving Rowland Marcus Andrade, a claimant in this case ("claimant"). At that time, I learned that claimant was liquidating his equity in various assets he had purchased with purportedly ill-gotten funds as a result of this scheme, including the real property named in the complaint.

Beck Decl., Ex. 1 at ¶ 2. Andrade subsequently informed his attorneys that he had not taken any actions around February 2020 to liquidate assets related to AML Bitcoin, including the defendant parcel of real estate. Beck Decl. at ¶ 4; Declaration of Rowland Marcus Andrade in Support of Motion for Leave to File Motion for Partial Reconsideration (Andrade Decl.) at ¶ 2. . Andrade had put his house up for sale in December 2018, but did not sell it. Andrade Decl. at ¶ 3. Instead, he took out a loan using his house as collateral in April 2019, using the proceeds to fund development of the AML Bitcoin technology. *Id.* Andrade then took out a mortgage on his home in September 2019, paying back the April 2019 loan and using the remaining balance for completion of the technology. *Id.* at ¶ 4. He also took a loan out on a separate parcel of land he owned in Corpus Christi, Texas, in February 2019, before selling it in June 2019—again, using the proceeds to fund development of AML Bitcoin. *Id.* at ¶ 5.

Andrade's counsel subsequently asked AUSA Kaltsas about this allegation during a phone call on July 14, 2020. Beck Decl. at ¶ 5. Kaltsas answered that he believed February 2020 was when he personally learned of the alleged liquidation, not that February 2020 was when the alleged liquidation actually occurred or when the government more generally learned of it. Beck Decl. at ¶ 5. Kaltsas also said he would check as to when the alleged liquidation actually took place. Beck Decl. at ¶ 5. Kaltsas did not respond before filing the government's motion for voluntary dismissal on July 17, or before the Court entered the Order.

In the Order, the Court explained that the government's decision to file its civil forfeiture complaint long before seeking a criminal indictment was reasonable in view of the COVID-19 pandemic's interference with court and government operations. Order at 4. But as noted above,


there was no actual need to quickly file a civil forfeiture proceeding to prevent Andrade from liquidating the defendant parcel of real estate.

Further, the government in fact filed the civil forfeiture complaint on March 23, 2020, after the Northern District of California issued its General Order 72, dated March 16, 2020, suspending grand jury proceedings until at least May 2020. Dkt. No. 1, Beck Decl., Ex. 3. Kaltsas's statements in his declaration that the government "was planning on soon indicting [Andrade] for his role in the fraud described above" as of March 23, and that the AUSA "did not expect the current conditions and circumstances to persist for over two months," are thus not consistent with the timeline of the Court's coronavirus-related orders. As of March 23, 2020, the government knew it would not soon be able to seek an indictment, and had no reason to rush to file a civil forfeiture complaint—so the Court should question why in fact the government did so.

Andrade's counsel then wrote to Kaltsas again on July 21, 2020, asking for confirmation as to the meaning of the statement in Kaltsas's declaration. Beck Decl., Ex. 2. Kaltsas responded, confirming that the alleged liquidation of assets happened before 2020. Beck Decl., Ex. 2.

Also in the time between Andrade's filing of his Rule 11 motion and the Order, the parties filed a Joint Status Report on July 8, 2020. Dkt. No. 49. In the joint status report, the government stated it would oppose Andrade's Rule 11 motion as untimely and unreasonable. *Id.* at 5. The government stated that the motion was untimely because discovery had not yet opened in this matter. *Id.* at 6. The government also stated that the facts underlying the case had been found to give rise to probable cause to support the indictment against Andrade, demonstrating that the complaint has adequate factual support. *Id.* However, the government still has not provided even a cursory explanation of what evidence it has to support either the civil forfeiture complaint or the indictment.

**ARGUMENT**

This Court's Local Civil Rule 7-9 permits a party to move for leave to file a motion for reconsideration of any interlocutory order on any ground set forth in the rule. A motion for leave to file a motion for reconsideration must show reasonable diligence in filing the motion, and one of the following: (1) that at the time of the motion for leave, a material difference in fact or law

NOTICE OF MOTION AND MOTION OF ANDRADE FOR LEAVE TO FILE
MOTION FOR PARTIAL RECONSIDERATION

exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought; (2) the emergence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order. Local Civil Rule 7-9(b)(1)-(3).

There is no question that Andrade has shown reasonable diligence in filing this motion. The Court entered the Order on July 17, 2020. Andrade filed this motion less than two weeks later, on July 29, 2020—and about a week after obtaining confirmation from the government's counsel as to the inaccuracy of the implication in the government's declaration on which this motion is based.

### A. <u>Incorrect statements and implications in the government's declaration in support of its motion to stay warrant reconsideration of the Order</u>

Because the government kept its declaration in support of its motion to stay sealed until after the close of briefing, Andrade never had the opportunity to address certain errors and misstatements in the declaration. Reconsideration is warranted to allow the Court to address those errors.

First, as noted above, the Court excused the government's decision to file a premature civil forfeiture action on March 23, 2020, as the result of the pandemic's interference with the government's plan (Order at 4)—but the facts subsequently discovered and confirmed by AUSA Kaltsas refute the government's excuse. There was in fact no need for the government to rush to file a civil forfeiture claim against Andrade because he was not attempting to sell the defendant property in February 2020. Andrade Decl. at ¶ 2. AUSA Kaltsas confirmed, after the Order was entered, that his declaration only intended to communicate that he personally learned, in February 2020, of the alleged liquidation—and that the alleged liquidation had in fact occurred long before February 2020. Beck Decl., Ex. 2.

Second, the Court failed to consider material facts that call into question the timeline for the government's actions. When the government filed this civil forfeiture complaint on March 23, 2020, this Court had already suspended grand jury proceedings until May 2020. Beck Decl., Ex. 3.

The government thus could not have "plann[ed] on soon indicting claimant for his role in the fraud" as of March 23. The facts that: (1) there was no need to prevent Andrade from imminently selling the defendant property, and (2) the Court had already entered its General Order No. 72 suspending grand jury proceedings when the government filed the Complaint, seriously calls into question the government's good faith. Instead, these facts show that the government rushed to file an unsupported civil complaint seeking forfeiture of Andrade's house in the middle of a pandemic in order to harass him. At a minimum, the additional evidence of the government's bad faith should weigh in favor of entertaining Andrade's Rule 11 motion.

Third, the Court failed to address the fact that the government's purported basis for the stay was mooted by its filing of the criminal indictment against Andrade. The government's declaration in support of its motion to stay made two claims: (1) that allowing Andrade to uncover the identities of individuals mentioned in the complaint may jeopardize their safety; and (2) that the government cannot disclose the facts known to law enforcement without disclosing the existence and nature of the related criminal investigation. Beck Decl., Ex. 1 at ¶¶ 7-8. The former concern is baseless, as the identity of the individuals referred to in the complaint as "J.D." and "VICTIM ONE" was obvious and known to Andrade from a simple comparison of financial records. Dkt. No. 32 at 7-8. The latter concern was mooted when the government disclosed the existence and nature of the related criminal investigation by filing a detailed indictment of Andrade. *United States v. Andrade*, No. 20-cr-249, Dkt. No. 1 (N.D. Cal. June 22, 2020) (unsealed June 25, 2020). Indeed, the grounds on which the Court granted the government's motion to stay—its "significant burden trying to conduct this robust civil discovery while also prosecuting its criminal case" (Order at 4)—was not even a basis the government raised in its motion to stay. AUSA Kaltsas's declaration did not claim that Andrade's discovery requests would be overly burdensome, but merely that they would require "disclosing the existence and nature of the related criminal investigation." Beck Decl., Ex. 1 at ¶ 8. Nor did the government complain of overly burdensome discovery requests in the parties' joint status report, though it raised new rationales that have never been briefed or supported by sworn declarations. Dkt. No. 49 at 3. Where the

12 | Case No. 3:20-cv-2013-RS
NOTICE OF MOTION AND MOTION OF ANDRADE FOR LEAVE TO FILE
MOTION FOR PARTIAL RECONSIDERATION

3161-1002 / 1653239.1

government has not claimed that responding to discovery would be overly burdensome, the Court should not have granted a motion to stay based on that supposed burden.

### B. The Court's failure to consider material facts and law regarding Andrade's Rule 11 motion warrants reconsideration of the Order

Andrade's Rule 11 motion was not mooted by either the government's motion to stay or its motion for voluntary dismissal. The Supreme Court has held that a voluntary dismissal under Rule 41, even if granted, does not eliminate a Rule 11 violation: "Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990). More generally, the Court retains jurisdiction over any claim for attorney's fees even after a dismissal, because claims for attorney's fees are collateral to any decision on the merits. *Moore v. Permanente Medical Grp., Inc.*, 981 F.2d 443, 445 (9th Cir. 1992) (quoting *Cooter*).

Andrade has filed a well-supported motion for sanctions under Rule 11. The government may have avoided that motion by dismissing the complaint during the safe-harbor period, but it refused to do so. The government insisted during the safe-harbor period that it "has no intention of withdrawing a complaint based on a case that was already found to have probable cause by a judge for a seizure warrant, and a jury for an indictment." Dkt. No. 48-35. When Andrade called the government's bluff and filed its motion on July 8, the government then sought to withdraw its complaint less than two weeks later, apparently in order to avoid providing an evidentiary basis for its complaint. By denying Andrade's motion for Rule 11 sanctions without even requiring the government to file an opposition, the Court has ignored the Supreme Court's decision in *Cooter* regarding the interplay of Rules 11 and 41, shielded the government's litigation misconduct, and denied Andrade his right to view the evidence based on which the government attempted to take (and is still attempting to take) his residence.

The Court's decision to deny Andrade's Rule 11 motion is even more erroneous in view of the government's admissions in the parties' joint status report and the misleading information in opposing counsel's declaration. The government, in the parties' joint status report, argues primarily that the Rule 11 motion is untimely because "[d]iscovery has not yet opened in this matter." Dkt. No. 49 at 6. But "the violation of Rule 11 is complete when the paper is filed," and

cannot be saved by future discovery. *Cooter*, 496 U.S. at 395. If the government intended to argue that it requires discovery to provide an evidentiary basis for its complaint, it has admitted to violating Rule 11.[2] If the government is instead arguing that it has an evidentiary basis for its complaint and would produce it during discovery, then there should be no burden in requiring the government to produce that basis now—especially if, as appears likely, this case will be dismissed and discovery will never occur. And the government's admittedly misleading phrasing in its declaration in support of the motion to stay should further call into question the credibility of the government's complaint.

The government's similar claim that "the facts underlying this case have been found to give rise to probable cause for both a seizure warrant and an indictment" (Dkt. No. 49 at 6) is similarly meaningless without an identification of what facts were provided to the warrant-issuing judge and grand jury, and especially without any discussion of whether the government presented any known exculpatory evidence to them. If, hypothetically, the government's indictment relied primarily on a declaration from Jack Abramoff that Andrade failed to develop AML Bitcoin, while the government failed to inform the grand jury that AML Bitcoin launched to the public in April 2020, the grand jury's finding of probable cause would not save the government from having violated Rule 11. A complaint that states a claim on its face is still frivolous if it is refuted by dispositive evidence that the plaintiff knew of or should have known of following an adequate factual investigation. *See, e.g., Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) (litigant's allegations of copyright infringement violated Rule 11 where he should have been aware of dispositive evidence of prior creation).

If the government conducted an adequate investigation of its complaint, it should be trivially easy for it to respond to the Rule 11 motion. Andrade's Rule 11 motion makes three core arguments: (1) the statements the government alleges to be fraudulent were either true, believed by Andrade to be true, or are contradicted by AML Bitcoin's contracts with customers; (2) there could not have been a scheme to defraud "VICTIM ONE" because VICTIM ONE was offered a

---

[2] And because the Complaint was verified, such an admission would also imply that Bryan Wong perjured himself by verifying the complaint.

full refund as soon as Andrade discovered the possibility of a misunderstanding; and (3) there could not have been money laundering because the alleged transactions were ordinary, open, and made through regular traceable business transactions. All the government needs to do is to identify its evidence that the allegedly fraudulent statements were false, that Andrade intended to defraud VICTIM ONE despite the refund offer, and that the transactions at issue were intended to conceal illicit proceeds. Since it presumably already presented that evidence to the grand jury, and will have to produce that evidence in the criminal case, there is no good reason the government cannot provide that evidence now.

Finally, the Court's rationale for permitting the government's motion for voluntary dismissal to proceed but not Andrade's Rule 11 motion is logically flawed. The Court stated that it would entertain the motion for voluntary dismissal "in light of its potential to dispose of the case entirely." Order at 2 n. 3. But Andrade's Rule 11 motion has the same potential, as the relief it seeks is dismissal of the complaint with prejudice together with monetary sanctions. Dkt. No. 48 at 2. If the Court is willing to entertain dispositive motions despite the stay, it should entertain all pending dispositive motions.

## CONCLUSION

When the Court granted the government's motion to stay, it did not realize that the government's declaration was deceptively worded. It did not realize that the government did not have to quickly file a civil forfeiture action in March 2020 to prevent Andrade from imminently liquidating assets. It did not notice that the government's purported timeline justifying its action was incorrect—that the government filed its civil forfeiture complaint after the Court had already suspended grand jury proceedings (an issue that, in view of the government's implausible claim that it intended to immediately seek an indictment of Andrade after filing the civil forfeiture claim, raises further concerns about the government's intentions). It granted the stay based on an apparent burden that the government never raised in support of its motion to stay. The Court also did not take into account (as it could not, for the parties never had an opportunity to brief the issue) the Supreme Court's decision in *Cooter* regarding a Rule 11 motion's surviving a Rule 41 voluntary dismissal. Nor did it take into account the government's apparent argument in its joint

status report that it required discovery to begin before responding to Andrade's Rule 11 motion. And it failed to take into account that Andrade's Rule 11 motion, like the government's motion for voluntary dismissal, could dispose of the case entirely. In light of all these newly discovered facts and unaddressed binding law and factual inconsistencies, Andrade respectfully requests that the Court grant leave to file a motion for partial reconsideration of the July 17 Order.

Dated:  July 29, 2020                         Respectfully submitted,

By:      /s *Manuel A. Medrano*
MANUEL A. MEDRANO (SBN 102802)
 *mmedrano@zuberlawler.com*
**ZUBER LAWLER & DEL DUCA LLP**
350 S. Grand Ave., 32nd Floor
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

BRIAN J. BECK (*pro hac vice*, IL BN 6310979)
 *bbeck@zuberlawler.com*
**ZUBER LAWLER & DEL DUCA LLP**
135 S. LaSalle St., Suite 4250
Chicago, Illinois 60603
Telephone: (312) 346-1100
Facsimile: (213) 596-5621

*Attorneys for Claimant*
*Rowland Marcus Andrade*