1   DAVID L. ANDERSON (CABN 149604)
    United States Attorney
2
    HALLIE HOFFMAN (CABN 210020)
3   Chief, Criminal Division

4   CHRIS KALTSAS (NYBN 5460902)
    Assistant United States Attorney
5
         450 Golden Gate Avenue, Box 36055
6        San Francisco, California 94102-3495
         Telephone: (415) 436-7200
7        Facsimile: (415) 436-7234
         Email: chris.kaltsas2@usdoj.gov
8
    Attorneys for United States of America
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12
    UNITED STATES OF AMERICA,            )   CIVIL CASE NO. 20-02013-RS
13                                        )
              Plaintiff,                  )
14                                        )   **GOVERNMENT'S REPLY IN SUPPORT OF ITS**
         v.                               )   **MOTION FOR VOLUNTARY DISMISSAL**
15                                        )
                                          )
16  ONE   PARCEL   OF   REAL   PROPERTY   )
    LOCATED AT 9414 PLAZA POINT DRIVE,)
17  MISSOURI CITY, TEXAS, 77459,          )
                                          )
18            Defendant,                  )
                                          )
19  ROWLAND MARCUS ANDRADE,               )
                                          )
20            Claimant,                   )
                                          )
21  SOLMAZ ANDRADE,                       )
                                          )
22            Claimant, and               )
                                          )
23                                        )
    WILMINGTON SAVINGS FUND SOCIETY,      )
24  FSB as trustee for IRP FUND II TRUST 2A,)
                                          )
25            Claimant.                   )
    _____
26

27

28  GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR VOLUNTARY DISMISSAL
    CV 20-02013 RS

                                    1

## INTRODUCTION

In his response to the Government's motion to voluntarily dismiss its Complaint in this case, claimant Rowland Marcus Andrade ("Andrade") attempts to convince this Court that it cannot do so for two reasons. First, Andrade contends that the Court must dispose of his motion for Rule 11 sanctions before it may dismiss the Government's complaint. In so arguing, Andrade misconstrues controlling Supreme Court precedent; the Court need not wait to dismiss the complaint as it can adjudicate Andrade's motion for sanctions even after dismissal. Second, Andrade asserts that voluntary dismissal without prejudice is inappropriate in civil forfeiture cases because it precludes claimants from obtaining "prevailing party status" under the fee-shifting provisions of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). Andrade's argument over-simplifies precedent and misstates the Court's discretionary powers. The Court maintains the discretion to grant motions for voluntary dismissals of civil forfeiture actions without prejudice; indeed, a holding to the contrary would yield absurd results, as the Government could never dismiss meritorious civil forfeiture claims as a matter of prosecutorial discretion. Moreover, Andrade identifies no compelling reason voluntary dismissal under Federal Rule of Civil Procedure 41(a) is inappropriate here.  Accordingly, the Court should grant the Government's motion for voluntary dismissal.

Should the Court find that voluntary dismissal is inappropriate here, the Government respectfully requests that the Court maintain the current stay. Furthermore, if the Court wishes to exercise its discretion and reinstate Andrade's Rule 11 motion, the Government respectfully requests that the Court stay disposition of that motion until the end of the criminal case to prevent Andrade from circumventing the criminal discovery process.

## BACKGROUND

The Government respectfully directs the Court to its prior brief in this matter for a fulsome discussion of the procedural posture of the case. Docket Number ("Dkt. No.") 51, Government's Opening Brief, at 2-3. Since the time of that filing, the Ninth Circuit has denied Andrade's petition for a writ of mandamus, and Andrade has filed a motion seeking partial reconsideration of the Court's July 17, 2020 order. Dkt. Nos. 53, 54. Otherwise, the posture of the case remains the same.

GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR VOLUNTARY DISMISSAL
CV 20-02013 RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

Andrade contends that, although he believes the complaint should be dismissed, the Court must do so on his terms, to wit: with prejudice and attorney's fees and costs. First, Andrade argues that the Court cannot grant the Government's motion to voluntarily dismiss the complaint before disposing of the Rule 11 motion. Second, Andrade asserts that CAFRA's fee-shifting provision requires the Court to either deny the Government's motion or dismiss the case with prejudice, and that claimant's counsel is entitled to attorney's fees under either outcome. This memorandum will address these issues *seriatim*.

### A. RULE ELEVEN DOES NOT BAR THE COURT FROM DISMISSING THIS CASE.

Andrade asserts that the instant complaint cannot be dismissed until his "Rule 11 motion has been fully briefed and decided." Dkt. No. 55, Andrade's Response, at 4. Andrade first argues that dismissal is categorically impossible in this case; in the alternative, Andrade appears to cite the "plain legal prejudice" standard in an effort to convince the Court to exercise its discretion to deny the Government's motion. Id. at 4-5 (citing Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 395 (1990)); Cronin v. Pac. Gas & Elec. Co., No. 16-cv-3206, 2017 WL 1209938, at *2 (N.D. Cal. Apr. 3, 2017)). Both arguments are firmly misplaced.

In Cooter & Gell, the Supreme Court squarely confronted the tension between Federal Rules of Civil Procedure 11 and 41(a). In that case, the District Court granted a party's motion for Rule 11 sanctions more than three years after it dismissed the complaint forming the substantive basis for the action. Cooter & Gell, 496 U.S. at 389-90. Although Andrade cites this case for the proposition that he will be "unable to seek sanctions for the government's misconduct" if the Court grants the Government's motion for voluntary dismissal, Cooter & Gell actually stands for the opposite idea. There, the Supreme Court concluded that courts may hear Rule 11 sanctions motions after granting a motion for voluntary dismissal. Indeed, "[i]t is well established that a federal court may consider collateral issues", such as motions for sanctions, "after an action is no longer pending." Id. at 395. As in cases where parties seek attorneys' fees or orders of contempt, federal courts are free to impose sanctions "years after the entry of a judgment on the merits." Id. at 395-96 (quoting White v. N.H. Dep't of Emp. Sec., 455 U.S. 445, 451 n.13 (1982)). The Court maintains the ability to hear these motions

GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR VOLUNTARY DISMISSAL
CV 20-02013 RS

1   precisely because "a Rule 11 sanction does not signify a district court's assessment of the legal merits of

2   the complaint," and is instead collateral to substantive determinations. Id. Accordingly, "the imposition

3   of such a sanction after a voluntary dismissal does not deprive the plaintiff of his right under Rule

4   41(a)(1) to dismiss an action without prejudice." Id. at 396.

5       The Supreme Court's holding in Cooter & Gell simultaneously undercuts Andrade's argument

6   with respect to "plain legal prejudice." Dkt. No. 55 at 5. Andrade will be able to pursue a motion for

7   Rule 11 sanctions even if this Court grants the Government's motion. Accordingly, there would be no

8   legal prejudice if this Court granted the Government's motion.

9       To that end, Andrade's real grievance appears to lie with the timing of the Court's ruling on his

10  motion for Rule 11 sanctions. Andrade aggressively argues in his motion for partial reconsideration that

11  the Court's order denying his motion for sanctions without prejudice "lacks a logical basis,"

12  notwithstanding the Court's invitation to refile the motion when the stay is lifted. Dkt. No. 54 at 6. But

13  waiting for discovery to open to see the evidence the Government has collected is a logical step before

14  the Court hears Andrade's motion for sanctions. By waiting, the Court will prevent Andrade from

15  evading the criminal discovery process and obtaining discovery outside the appropriate timeline, and

16  will also be able to evaluate the evidence the Government gathered prior to filing the complaint. The

17  Government thus submits that the denial of the Rule 11 motion without prejudice was an appropriate

18  exercise of discretion and should be maintained until the stay is lifted if the Court denies the

19  Government's motion to dismiss. Should the Court grant the Government's motion, the Government

20  respectfully requests that the Court not hear Rule 11 motions until after the conclusion of the criminal

21  case.  Regardless, the Court should not find that Andrade suffered any prejudice from its denial of his

22  motion for sanctions at this juncture, especially as Andrade can refile his Rule 11 motion.

23  **B.  VOLUNTARY DISMISSAL IS APPROPRIATE IN THIS CASE BECAUSE ANDRADE**
24  **CANNOT REASONABLY CLAIM "PREVAILING PARTY STATUS," RENDERING**
    **HIS CLAIMS TO ATTORNEY'S FEES AND COSTS MOOT.**

25      Andrade next contends that the Court is categorically barred from granting the Government's

26  motion for voluntary dismissal because that result would preclude Andrade from "obtaining prevailing

27

28  GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR VOLUNTARY DISMISSAL
    CV 20-02013 RS

1    party status" under the fee-shifting provision of CAFRA. Dkt. No. 55 at 5; see also 28 U.S.C. § 2465(b).

2    In support of his position, Andrade cites to a single unpublished, *per curiam* Ninth Circuit opinion that

3    addresses a case with unique facts, none of which are applicable here. Dkt. No. 55 at 5-6 (citing United

4    States v. Ito, 472 F. App'x 841 (9th Cir. 2012)).

5         Andrade misrepresents the holding in Ito and fails to describe the necessary factual background

6    in that case. He also misconstrues the meaning of "prevailing party status" under CAFRA. In essence, a

7    claimant in a civil forfeiture proceeding is entitled to attorney's fees and costs if the claimant

8    "substantially prevails" in such a proceeding. 28 U.S.C. § 2465(b)(1)(A). The Ninth Circuit has read the

9    "substantially prevails" provision in CAFRA to require that a party seeking attorney's fees "achieve an

10   'alteration in the legal relationship of the parties' that bears a 'judicial *imprimatur* on the change.'"

11   Synagogue v. United States, 482 F.3d 1058, 1063 (9th Cir. 2007) (quoting Buckhannon Bd. & Care

12   Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598, 600 (2001)). Any such alteration

13   must be sufficiently "material" to permit an award of attorney's fees. Buckhannon, 532 U.S. at 604

14   (citation omitted). This "change in legal relationship" between the parties need not be on the merits of a

15   case (as in, for example, the issuance of a consent decree), but must still be significant enough to allow

16   the Court to determine that some party "prevailed" over another. United States v. $32,820.56 in United

17   States Currency, 838 F.3d 930, 936 (8th Cir. 2016) (citing CRST Van Expedited, Inc. v. EEOC, __ U.S.

18   __, 136 S. Ct. 1642, 1651 (2016)).

19        Andrade's argument concerning his ability to pursue "prevailing party status" is wholly

20   incorrect. Courts across the country have determined that voluntary dismissals are appropriate in civil

21   forfeiture cases involving CAFRA's fee shifting provision. Where courts have concluded that voluntary

22   dismissal without prejudice is permissible, claimants generally do not "substantially prevail" under the

23   fee-shifting terms of CAFRA because there is no change in the legal relationship between the parties;

24   the United States would be free to refile its case against the defendant property upon dismissal without

25   prejudice. See, e.g., United States v. $70,670 in U.S. Currency, 929 F.3d 1293, 1302-03 (11th Cir. 2019)

26   (concluding that a claimant's argument that voluntary dismissal does not cause prejudice with respect to

27   prevailing party status under CAFRA); $32,820.56 in United States Currency, 838 F.3d at 934; United

28   GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR VOLUNTARY DISMISSAL
     CV 20-02013 RS

1   States v. Craig, 694 F.3d 509, 512 (3d Cir. 2012) (holding that stipulated dismissals in civil forfeiture

2   actions do not amount to a material change in the legal relationship between parties justifying an award

3   of attorney's fees); United States v. Minh Huynh, 334 F. App'x 636, 639 (5th Cir. 2009) (quoting

4   Buckhannon, 532 U.S. at 605) (concluding that the Government's voluntary dismissal of a civil

5   forfeiture case does not establish a material change in the legal relationship between parties for purposes

6   of fee-shifting under CAFRA); United States v. 2007 BMW 335i Convertible, VIN:

7   WBAWL73547PX47374, 648 F. Supp. 2d 944, 948-949, 951-52 (N.D. Ohio 2009) (listing civil

8   forfeiture cases applying Buckhannon, concluding that a voluntary dismissal without prejudice does not

9   mean that a claimant "substantially prevails" for CAFRA purposes). These cases demonstrate that courts

10  regularly dismiss civil forfeiture cases without prejudice. To hold otherwise would render an absurd

11  result, as courts would accordingly require the Government to continue prosecuting all meritorious civil

12  forfeiture actions without regard to various issues that arise in the exercise of prosecutorial discretion.

13  $32,820.56 in United States Currency, 838 F.3d at 937. Courts nevertheless maintain the discretion to

14  avoid dismissals without prejudice in those cases where it would be unfair in light of the specific case

15  before them. Id. at 936-37 (citing, among other things, Ito, 472 F. App'x at 842).

16      Ito is thus the exception, not the rule. As the District Court noted upon the Ninth Circuit's

17  remand of Ito, the civil forfeiture case was initially brought and then stayed pending the disposition of a

18  related criminal case involving the same property, which ultimately resulted in acquittal of the

19  defendant. United States v. One 2008 Toyota RAV4 Sports Utility Vehicle, No. 2:09-CV-05672-SVW,

20  2012 WL 5272281, at *1 (C.D. Cal. Oct. 18, 2012). Although the District Court initially concluded that

21  the Claimants were not entitled to attorney's fees, the court's analysis changed upon remand to reflect

22  the fact that, "*implied* in the holding [of the Ninth Circuit] is the recognition that dismissal with

23  prejudice on the facts of this case *could* have given rise to prevailing party status." Id. at *3 (emphasis

24  added). With that implication in mind, the District Court ruled in favor of the claimants and found that

25  the Ninth Circuit recognized, in some form or another, that they had obtained prevailing party status.

26      In this case, there is no such implication. Unlike in Ito, Andrade has not succeeded in

27  overcoming the accusations underlying the civil forfeiture complaint in a related criminal case.

28  GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR VOLUNTARY DISMISSAL
    CV 20-02013 RS

1   Furthermore, there is no reason for the Court to believe that dismissal with prejudice *is* appropriate here.

2   Andrade's argument that the Government is functionally unable to refile this case whether the Court

3   dismisses it with or without prejudice is fundamentally incorrect, as noted *supra*. Moreover, prevailing

4   party status is no categorical bar to dismissal of a civil forfeiture complaint without prejudice. Andrade

5   has failed to indicate any valid reason why this case requires dismissal with prejudice as the Ninth

6   Circuit required in Ito.

7          Andrade also contends that the Court should apply a three-factor test in determining whether

8   dismissal with prejudice is warranted as a matter of the Court's discretion. Dkt No. 55 at 6 (citing

9   Burnette v. Godshall, 828 F. Supp. 1439, 1443-44 (N.D. Cal. 1993)). As the Government indicated in its

10  opening motion, the Court should generally consider the "plain legal prejudice" Andrade will suffer as a

11  result of dismissal. Westlands Water Dist. v. United States, 100 F.3d 94, 96-97 (9th Cir. 1996). Under

12  that standard, Andrade bears the burden of making "a significant showing" that dismissal under Rule 41

13  is inappropriate. McCovey v. Astrazeneca Pharms., L.P., No. 06-cr-0681-SC, 2006 WL 2329465, at *1

14  (N.D. Cal. Aug. 9, 2006) (quoting Kern Oil Refining Co. v. Tenneco Oil Co., 792 F.2d 1380, 1390 (9th

15  Cir. 1986)). Andrade's showing falls well below that standard. Andrade essentially contends that, apart

16  from his perceived inability to continue Rule 11 or attorney's fees proceedings, the Government's

17  explanation for dismissal is insufficient and thus renders voluntary dismissal unfair. Dkt. No. 55 at 6.

18  Regardless of whether the Court chooses to apply the "plain legal prejudice" standard or the three-factor

19  test Andrade proposes, Andrade cannot make the showing necessary to prevent voluntary dismissal. The

20  Government's decision to file the instant motion was motivated by the desire to litigate Andrade's case

21  efficiently by consolidating as much of the case against Andrade, including forfeiture, into the extant

22  criminal case as possible. The Government's decision was in no way motivated by the pending motion

23  for Rule 11 sanctions. Rather, this decision is part of the Government's prosecutorial discretion,

24  especially in light of the continued viability of Rule 11 sanctions upon dismissal. Andrade accordingly

25  makes no meaningful argument with respect to plain legal prejudice.

26         Andrade next asserts that to the extent this case is dismissed, he is entitled to "attorney's fees and

27  costs." Dkt. No. 55 at 7. Andrade argues that he is entitled to attorney's fees upon dismissal because he

28  GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR VOLUNTARY DISMISSAL
    CV 20-02013 RS

"will have substantially prevailed in this civil forfeiture action" regardless of whether dismissal is

voluntary, and because the Government has initiated its criminal case against Andrade, which entails

criminal forfeiture of the subject property. Both arguments are incorrect. With respect to his argument

concerning prevailing party status, as noted above, Andrade has no claim to prevailing party status under

CAFRA because he has unequivocally failed to demonstrate any potential change in the relationship

between the parties if the Court grants the Government's motion. See Synagogue, 482 F.3d at 1063

(quoting Buckhannon, 532 U.S. at 600).  Andrade presents no other "significant showing" explaining

why the Court should dismiss this case with prejudice.  Accordingly, the Court should grant the

Government's motion, especially as "[d]ismissal without prejudice is the general rule, not the other way

around."  $70, 670.00 in U.S. Currency, 929 F.3d at 1302 (citing Fed. R. Civ. P 41(a)(2)).

Andrade's final entreaty to attorney's fees rests in his invocation of Federal Rule of Civil

Procedure 41(d). Rule 41(d) provides that

> [i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
>
> (1) may order the plaintiff to pay all or part of the costs of that previous action; and
>
> (2) may stay the proceedings until the plaintiff has complied.

Andrade has failed to cite any case law in support of his claim that he is owed attorney's fees pursuant to

Rule 41(d). That deficiency is unsurprising; the Government has not engaged in any conduct violating

the rule. The Government never filed a civil action involving the subject property prior to this one, and

accordingly, should not bear the cost of a claimant's civil suit simply because a criminal prosecution

involving the same property as the civil suit arose thereafter. Claimant candidly admits that the rule

"may not technically apply because [of] the unique nature of civil forfeiture law." Dkt. No. 55 at 9. The

Government agrees that, given the unique circumstances governing forfeiture law, Rule 41(d) is

generally inapplicable in parallel civil and criminal forfeiture actions.

Andrade nevertheless asserts that the Government should pay for his attorneys' fees as a matter

of equity. Id. Andrade's arguments veer into the absurd with respect to the equities of the case; nothing

about the Government's timing of its filings indicate the Government ever attempted to harass Andrade or any of the other claimants. Andrade also attempts to portray the Government as dishonest and misleading, claiming that the Government's recounting of the events was designed to deviously persuade the Court to grant its motion for a stay. Nothing could be further from the truth. The Government's declaration indicates that the undersigned personally learned of Andrade's attempts to liquidate assets shortly before filing this complaint. To the extent that the Court may have construed this language to mean that the Government's understanding was that Andrade was liquidating properties in 2020, the undersigned apologizes and notes that there was no intent to mislead.

Still, there are various issues with Andrade's claims that the Government's "misrepresentations" had any effect on the Court's rulings. First, and perhaps most importantly, is that the language in the Government's declaration does not appear to have motivated the Court's findings with respect to its order granting a stay; rather, it appears that the Court's order was based on the existence of a related criminal case and the extraordinary number of discovery requests Andrade seeks to propound in this matter. Dkt. No. 52 at 4. Moreover, the Government notes that its decision to file its complaint at the time it did was based on a number of factors, including plans to file an indictment as soon as possible after it filed the instant complaint, as well as an understanding that the Government would be able to proceed to grand jury sooner rather than later. At that time, the Government understood that the grand jury would be available by May 1, 2020. Another part of that calculus was the timing of the deadlines for claimants' filings in this matter and the likelihood of substantial time passing before any claimant would file a verified claim. Indeed, Andrade himself did not file his verified claim until May 11, 2020, ten days after the grand jury was originally due to reopen. Dkt. No. 10. Finally, the Government would be remiss to not mention that, in cases involving large assets, the Government frequently files civil complaints before or simultaneously with a criminal indictment; in no way is that practice meant to harass any potential claimant. The Government accordingly asserts that the equities do not favor denying the Government's motion.

**CONCLUSION**

The Government's goal is moving to dismiss the instant case is to simplify the proceedings before the Court, as there is a criminal forfeiture allegation in the Indictment which involves the subject property. The Government has no hidden purpose or agenda, including the evasion of Rule 11 sanctions, especially as those may survive a motion to dismiss. Moreover, there is no compelling reason for the Court to require the Government to dismiss this case with prejudice. Andrade's attempts to invoke CAFRA's fee-shifting provision, the potential for prejudice, and the equities of the case each fail for the reasons described above.

As far as relief is concerned, the Government notes that the Court has several options in disposing of this case. The Government recommends that the Court grant the Government's motion and dismiss the complaint without prejudice, and allow Andrade to file a motion for Rule 11 sanctions at a later time, when the purportedly sanctionable conduct will be most apparent. Otherwise, Andrade would be able to circumvent the criminal discovery timeline. If the Court does not believe this course of action would be appropriate, the Government submits that the Court should continue to stay the case as opposed to dismissing the case with prejudice or litigating the Rule 11 motion immediately.

For the aforementioned reasons, the Government respectfully submits that the Court should grant its motion to voluntarily dismiss the complaint pursuant to Rule 41 of the Federal Rules of Civil Procedure.

DATED:      August 7, 2020                          Respectfully submitted,

                                                    DAVID L. ANDERSON
                                                    United States Attorney


                                                    _____/s/_____
                                                    CHRIS KALTSAS
                                                    Assistant United States Attorney

GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR VOLUNTARY DISMISSAL
CV 20-02013 RS

10